# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

---

|  |  |  |
|---|---|---|
| SC SHINE PLLC d/b/a 7 to 7 Dental and POTRANCO 7 TO 7 PLLC, | : | |
|  | : | |
|  | : | Civil Action 5:22-cv-00834-JKP |
|  | : | |
| Plaintiffs, | : | |
| v. | : | |
|  | : | |
| Aetna Life Insurance Co. and Aetna Dental Inc., | : | |
|  | : | |
| Defendants. | : | |

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

**FOX ROTHSCHILD LLP**
Colin Dougherty
(S.D. Tx. No.: 3183390)
David Grant Crooks
(Texas State Bar No. 24028168)
Benjamin H. McCoy
(PA Bar No. 314112)
(*Pro Hac Vice* motion forthcoming)
Saint Ann Court
2501 N Harwood Street, Suite 1800
Dallas, TX 75201
cdougherty@foxrothschild.com
dcrooks@foxrothschild.com
bmccoy@foxrothschild.com
phone: 214.231.5728
fax: 972.404.0516

***Attorneys for Defendants Aetna Life Insurance Co. and Aetna Dental Inc.***

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

INTRODUCTION .................................................................................................. 1

RELEVANT BACKGROUND .............................................................................. 2

    I.     The Parties and Background of the Insurance Industry ............................... 2

    II.    Facts Alleged in the Complaint ................................................................. 2

STANDARD OF REVIEW ................................................................................... 3

LEGAL ARGUMENT ........................................................................................... 4

    I.     Shine Fails to Plead a Claim for ERISA Benefits .......................................... 4

    II.    All of Shine's Non-ERISA Claims Fail Because They are Preempted
           by ERISA ....................................................................................................... 6

           A.    Count II for Breach of Implied Contract is Preempted Because it
                   Hinges upon the Terms of ERISA Plans ............................................. 7

           B.    Counts III and IV for Violations of the Texas Insurance Code
                   are Preempted Because They Involve the Handling and Review
                   of ERISA Claims ................................................................................. 7

           C.    Shine's Tort Claims (Counts V-VI, VIII-X) are Preempted
                   Because They Are Dependent upon and Derived from ERISA
                   Plans ..................................................................................................... 8

    III.   Shine's Non-ERISA Claims Also Fail as a Matter of Law .......................... 9

           A.    Count II for Breach of Implied Contract Fails Because Shine
                   Has Not Pled Any of the Required Elements ...................................... 9

            B.    Shine's State Statutory Claims Fail for Numerous Reasons ........... 11

           C.    Count V for Fraud Fails Because Shine Fails to Plead With
                   Specificity Under Rule 9(b) and Fails to Plead Reliance,
                   Foreseeability, and Knowledge of Falsity ........................................ 14

           D.    Count VI for Negligent Misrepresentation Fails for the Same
                   Reasons as Count V and Because Such Claims Cannot be Based
                   Upon Representations Regarding Future Conduct ........................... 17

i

E.   Count VII for Breach of Contract Fails for the Same Reasons as the ERISA Claim.................................................................... 18

F.   Count VIII for Money Had and Received Fails Because it is Barred by the Economic Loss Rule and Does Not Apply to the Relationship Between Shine and Aetna ............................................ 18

G.   Count IX for Theft of Services Fails Because Aetna Did Not Obtain Any Services from Shine and for Lack of Specificity ......... 19

H.   Count X for Promissory Estoppel Because Shine Cannot Plead a Promise, Foreseeability, or Reliance................................................ 20

CONCLUSION ............................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*290 at 71 L.L.C. v. JPMorgan Chase Bank*,
    No. 09-576, 2009 WL 3784347 (W.D. Tex. Nov. 9, 2009).....................................................18

*Alessi v. Raybestos-Manhattan, Inc.*,
    451 U.S. 504 (1981)...............................................................................................................7

*Allstate Ins. Co. v. Receivable Fin. Co.*,
    501 F.3d 398 (5th Cir. 2007) ................................................................................................15

*Am. S. Ins. Co. v. Buckley*,
    748 F. Supp. 2d 610 (E.D. Tex. 2010)..............................................................................12, 13

*American Surgical Assistants, Inc. v. United Healthcare of Texas, Inc.*,
    No. 09-0774, 2010 WL 1340557 (S.D. Tex. Mar. 30, 2010) ................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................................4, 13

*Bailey v. State Farm Lloyds*,
    No. 00-3638, 2001 WL 34106907 (S.D. Tex. Apr. 12, 2001)...............................................13

*Baker v. Great N. Energy, Inc.*,
    64 F. Supp. 3d 965 (N.D. Tex. 2014) ...................................................................................19

*Ballard v. Lincoln Life Assurance Company of Boston*,
    No. 20-2530, 2020 WL 5539874 (S.D. Tex. Sept. 15, 2020) .................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................................4, 13

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
    343 F.3d 719 (5th Cir. 2003) ...........................................................................................15, 17

*City of Clinton v. Pilgrim's Pride Corp.*,
    632 F.3d 148 (5th Cir. 2010) ................................................................................................17

*Climb Tech, LLC v. Verble*,
    No. 05-864, 2008 WL 11334913 (W.D. Tex. Feb. 7, 2008)..................................................10

*Companion Prop. & Cas. Ins. Co. v. Opheim*,
    No. 14-0752, 2014 WL 4209586 (N.D. Tex. Aug. 26, 2014)................................................12

*Crain v. City of Selma*,
No. 16-408, 2017 WL 837687 (W.D. Tex. Mar. 3, 2017).......................................................17

*DAC Surgical Partners P.A. v. United Healthcare Services, Inc.*,
No. 11-1355, 2016 WL 7157522 (S.D. Tex. Dec. 7, 2016)...............................................15, 20

*DAC Surgical Partners P.A. v. United Healthcare Services, Inc.*,
No. 11-1355, 2016 WL 7177881 (S.D. Tex. Dec. 8, 2016)...............................................10

*Druker v. Fortis Health*,
No. 06-00052, 2007 WL 38322 (S.D. Tex. Jan. 4, 2007)...............................................18

*Egelhoff v. Egelhoff*,
532 U.S. 141 (2001)...............................................7

*Electrostim Medical Services, Inc. v. Health Care Service Corp.*,
614 F. App'x. 731 (5th Cir. 2015) .......................................................10

*Ellis v. Liberty Life Assur. Co. of Boston*,
394 F.3d 262 (5th Cir. 2004) .......................................................8

*FMC Corp. v. Holliday*,
498 U.S. 52 (1990)...............................................7

*Fort Worth Independent School Dist. v. City of Fort Worth*,
22 S.W.3d 831 (Tex. 2000)...............................................11

*Fortune Production Co. v. Conoco, Inc.*,
52 S.W.3d 671 (Tex. 2000)...............................................19

*Freedom Equity Groutp, Inc. v. MTL Insurance Company*,
No. 01-14-00210,  2015 WL 1135186, at *3 (Tex. App.—Houston, March 12,
2015) .......................................................15

*Fustok v. UnitedHealth Group, Inc.*,
No. 12-787, 2013 WL 12188582 (S.D. Tex. Jan. 18, 2013)...............................................15, 17

*Garcia v. Boyar & Miller, P.C.*,
No. 06-1936, 2007 WL 2428572 (N.D. Tex. Aug. 28, 2007)...............................................18

*Gilmour v. Intertek USA, Inc.*,
No. 13-00266, 2018 WL 3059682 (S.D. Tex. May 30, 2018)...............................................9

*Great Am. Ins. Co. v. Fed. Ins. Co.*,
No. 04- 2267, 2006 WL 2263312 (N.D. Tex. Aug. 8, 2006)...............................................12

*Heimeshoff v. Hartford Life & Accis. Ins. Co.*,
571 U.S. 99 (2013)...............................................4

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
   832 S.W.2d 39 (Tex. 1992)................................................................................19

*Herman Holdings, Ltd. v. Lucent Technologies Inc.*,
   302 F.3d 552 (5th Cir. 2002) ...........................................................................17

*Houston Home Dialysis, LP v. Blue Cross and Blue Shield of Texas*,
   No. 17-2095, 2018 WL 2562692 (S.D. Tex. June 4, 2018)............................8, 9

*Houston Metro and Spine Surgery Center, LLC v. Health Care Service
   Corporation*,
   No. 16-1402, 2017 WL 1231072 (S.D. Tex. Apr. 4, 2017).................................9

*James v. Wells Fargo Bank, N.A.*,
   533 F. App'x 444 (5th Cir. 2013).......................................................................18

*Kirk v. Kemper Investors Life Ins. Co.*,
   448 F. Supp. 2d 828 (S.D. Tex. 2006) ..............................................................16

*Korman v. ILWU-PMA Claims Office*,
   No. 18-07516, 2019 WL 3033529 (C.D. Cal. July 3, 2019)..........................8, 16

*Lakewood Chiropractic Clinic v. Travelers Lloyds Ins. Co.*,
   No. 09-1728, 2009 WL 3602043 (S.D. Tex. Oct. 27, 2009) ............................14

*Lasewicz v. Joyce Van Lines, Inc.*,
   830 F. Supp. 2d 286 (S.D. Tex. 2011) ..............................................................12

*Lone Star Ladies Investment Club v. Schlotzsky's Inc.*,
   238 F.3d 363 (5th Cir. 2001) ...........................................................................14

*Mayeaux v. Louisiana Health Service and Indem. Co.*,
   376 F.3d 420 (5th Cir. 2004) .............................................................................8

*McCoy v. Alden Industries, Inc.*,
   469 S.W.3d 716 (Tex. App.—Fort Worth 2015).................................................10

*McNeil v. Time Ins. Co.*,
   205 F.3d 179 (5th Cir. 200) ...............................................................................7

*MetroplexCore, L.L.C. v. Parsons Transp., Inc.*,
   743 F.3d 964 (5th Cir. 2014) ...........................................................................20

*Mission Toxicology, L.L.C. v. UnitedHealthcare Insurance Company*,
   No. 17-1016, 2018 WL 2222854 (W.D. Tex. Apr. 20, 2018) ...................11, 19, 20

*Moore v. Travelers Indem. Co.*,
   No. 10-1695, 2010 WL 5071036 (N.D. Tex. Dec. 7, 2010) ............................13

*Mugg v. Hutmacher*,
    No. 18-732, 2019 WL 3538979 (W.D. Tex. July 10, 2019)..................................................16

*Owens v. Spanish Village Community Development Corp.*,
    No. 05-3679, 2006 WL 237030 (S.D. Tex. Jan. 31, 2006).....................................................10

*Plotkin v. IP Axess, Inc.*,
    407 F.3d 690 (5th Cir. 2005) ...............................................................................................15

*Plotkin v. Joekel*,
    304 S.W.3d 455 (Tex. App.—Houston 2009) ........................................................................9

*Provident Am. Ins. Co. v. Castaneda*,
    988 S.W.2d 189 (Tex. 1998).........................................................................................16, 17

*Quality Infusion Care Inc. v. Humana Health Plan of Texas Inc.*,
    290 Fed. Appx. 671 (5th Cir. 2008*)* ....................................................................................8

*R2 Invs. LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005) .................................................................................................4

*Rehabworks, LLC v. Flanagan*,
    No. 03-07-00552-CV, 2009 WL 483207 (Tex. App.—Austin Feb 26, 2009) .......................19

*RMP Enters., LLC v. Conn. Gen. Life. Ins. Co.*,
    No. 18-80171, 2018 WL 6110998 (S.D. Fla. Nov. 21, 2018) ...............................................15

*Romano Woods Dialysis Center v. Admiral Linen Service, Inc.*,
    No. 14-1125, 2015 WL 4393027 (S.D. Tex. June 30, 2015), *aff'd* 653 F. App'x
    373 (5th Cir. June 30, 2016) ...................................................................................................5

*Sadeghi v. Aetna Life Insurance Company*,
    564 F. Supp. 3d 429 (M.D. La. 2021)...................................................................................15

*Scott & White Memorial Hospital v. Aetna Health Holdings, LLC*,
    No. 17-0075, 2018 WL 7377912 (W.D. Tex. Aug. 31, 2018)..................................................6

*Sky Toxicology, Ltd. v. UnitedHealthcare Ins. Co.*,
    No. 16- 01094, 2018 WL 4211741 (W.D. Tex. Sept. 4, 2018) ...............................................5

*Southland Sec. Corp. v. Inspire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) .................................................................................................4

*Spring E.R., LLC v. Aetna Life Ins. Co.*,
    No. 09-2001, 2010 WL 598748 (S.D. Tex. Feb. 17, 2010) .....................................................7

*Spring Street Apts Waco, LLC v. Philadelphia Indemnity Insurance Company*,
    No. 16-00315, 2017 WL 1289036 (W.D. Tex. Apr. 6, 2017) ...............................................14

*Stewart Title Guar. Co. v. Mims*,
   405 S.W.3d 319 (Tex. App.—Dallas 2013)..............................................................11

*Terry v. Safeco Ins. Co. of Am.*,
   930 F. Supp. 2d 702 (S.D. Tex. 2013) ...................................................................12

*Tuchman v. DSC Communications Corp.*,
   14 F.3d 1061 (5th Cir. 1994) ...............................................................................17

*UnitedHealthcare Servs., Inc. v. Next Health, LLC*,
   No. 17-0243, 2019 WL 1426256 (N.D. Tex. Mar. 29, 2019)....................................4

*Walker v. Cotter Properties, Inc.*,
   181 S.W.3d 895 (Tex. App.—Dallas 2006)............................................................20

*In re WellPoint, Inc. Out-Of-Network "UCR" Rates Litig.*,
   No. 09-2074, 2014 WL 6888549 (C.D. Cal. Sept. 3, 2014) ...............................6, 8

*Williams v. Wells Fargo Bank, N.A.*,
   560 F. App'x 233 (5th Cir. 2014) .........................................................................18

*Windmill Wellness Ranch, L.L.C. v. Blue Cross and Blue Shield of Texas*,
   No. 19-01211, 2020 WL 7017739 (W.D. Tex. Nov. 23, 2020)........................5, 11, 14, 15

*United States ex rel. Woodard v. DaVita, Inc.*,
   No. 05- 227, 2011 WL 13196556 (E.D. Tex. May 9, 2011)....................................15

## Statutes

29 U.S.C. § 1132(a)(1)(B) ............................................................................................4

29 U.S.C. § 1144(a) .....................................................................................................7

29 U.S.C. §§ 1001-1461 ...................................................................................... *passim*

Tex. Ins. Code §§ 541-542 ..............................................................................11, 12, 13, 14

## Other Authorities

Fed. R. Civ. P. 8 ..........................................................................................................17

Fed. R. Civ. P. 9(b) .............................................................................................14, 15, 17

Fed. R. Civ. P. 12(b)(6)...............................................................................................20

TO THE HONORABLE JASON K. PULLIAM., UNITED STATES DISTRICT JUDGE:

Defendants Aetna Life Insurance Company and Aetna Dental Inc. (collectively, "Aetna") file this Motion to Dismiss the First Amended Complaint ("FAC") of Plaintiffs SC Shine PLLC d/b/a 7 to 7 Dental and Potranco 7 to 7 PLLC (collectively, "Shine"), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). In support thereof, Aetna relies upon the following memorandum of law.

## INTRODUCTION

Shine is a dental health provider that allegedly treated hundreds of individuals enrolled in _**different**_ health benefit plans administered or insured by Aetna. Shine alleges that Aetna failed to pay, or underpaid, thousands of health claims for services it provided to these individuals. Shine makes no claim or plan-specific allegations – _**none**_ – and instead tries to avoid its pleading burden entirely by foisting 272 pages of accounting records into the record and asking the Court to figure out what Aetna allegedly did wrong for each one. Shine cannot avoid its pleading burden for each of the thousands of claims it purports to bring through sheer volume. Beyond this threshold failing, the FAC fails for numerous additional reasons.

As to the ERISA claim (Count I), Shine has not met its burden to identify the provision of the plans that were breached for each distinct plan or, for that matter, which of the claims in its accounting records are subject to this Count. Nor could it because, as Shine admits, _**it has never seen the plans it claims were breached**_.

As to the non-ERISA claims (Counts II-X), they are preempted by ERISA because each one is related to the terms of an ERISA plan and turns on the handling or administration of an ERISA plan. In addition, preemption aside, Shine's non-ERISA claims fail as a matter of law. They each rest primarily upon conclusions and the only purported facts that are proffered have been repeatedly rejected by courts. The FAC should be dismissed with prejudice.

## RELEVANT BACKGROUND

### I.      The Parties and Background of the Insurance Industry

Aetna acts as both a health insurer and a health plan administrator.[1] As an insurer, Aetna offers fully-insured health plans under which it agrees to pay for covered health care claims in return for the payment of premiums by plan members and their employers. FAC ¶ 24. Aetna also acts as an administrator for self-funded, employer-established health plans, through which employers pay for covered claims out of their own funds and Aetna performs certain "administrative" tasks such as claims processing. *Id.* In both capacities, individuals and employers hire Aetna to help control healthcare costs, improve member health outcomes, and thwart fraudulent, wasteful, and abusive billing practices.

Individuals covered by fully-insured and self-funded health plans are referred to as Aetna "members." According to Shine, it is a medical practice that is "out-of-network" with respect to Aetna. *Id.* ¶ 1. In contrast to an "in-network" provider, "out-of-network" providers have no contract with Aetna relating to any matter, including reimbursement for health care services Shine renders to Aetna members. Nor does Shine suggest otherwise, and instead asserts claims as an assignee of the members or directly under state common law and statutory theories.

### II.     FACTS ALLEGED IN THE COMPLAINT

Shine claims that it provided dental services between 2019 and 2022 to hundreds of individuals ("members") who were enrolled in health plans either administered or insured by Aetna. *See, e.g.*, FAC ¶ 11. At some point, the members allegedly assigned their benefits under

---

[1] Shine does not differentiate between Aetna Life Insurance Company or Aetna Dental Inc., which itself is a defect warranting dismissal. Aetna has therefore responded in the collective as well. Aetna Dental Inc. is an HMO that Shine did not participate in, and Aetna Dental Inc. has never received or paid claims from Shine.  There is no basis for Aetna Dental Inc. to be in this case.

the plans to Shine.  *See* FAC ¶ 14.

Shine alleges that it is entitled to more money from Aetna, claiming that Aetna was required to pay whatever amount Shine unilaterally decided to bill based upon three overarching factual theories. ***First,*** Shine claims that it is entitled to additional payment as an assignee of the members pursuant to the terms of each members' ERISA plan, although it admits it has never even reviewed the plans to determine the rate of payment they require. FAC ¶¶ 40, 76. ***Second***, Shine claims that Aetna's payment of claims prior to 2019 created a binding "implied" contractual obligation to pay its claims indefinitely into the future.[2] *Id.* ¶ 53. ***Third***, Shine claims that Aetna's pre-service "verification of benefits" amounted to a binding promise to pay. *Id.* ¶ 74. On these erroneous grounds, Shine brings claims for ERISA benefits (Count I), breach of implied contract (Count II), violations of the Texas Insurance Code (Counts III, IV), fraud (Count V), negligent misrepresentation (Count VI), breach of contract (Count VII), money had and received (Count VIII), theft of services (Count IX) and promissory estoppel (Count X).

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, can "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court takes the facts alleged in the complaint and all ***reasonable*** inferences arising therefrom as true, but

---

[2] Aetna received allegations of healthcare fraud in 2019. After investigating, Aetna requested that Shine submit additional information for each claim so that it could verify the accuracy and necessity of each claim. FAC ¶¶ 1-3, 5. As Shine acknowledges, Aetna fully disclosed this to Shine and made it aware of the consequences for failing to submit the requisite information. *Id.* ¶ 5. In the FAC, Shine frames Aetna's fulfillment of its duty to investigate healthcare fraud as some form of "fraudulent misconduct," (*id.* ¶ 6), despite the fact Shine admittedly had full knowledge of the request for information and the basis thereof. While irrelevant to the current Motion, Shine cannot seriously attack Aetna for trying to ferret out fraud.

"threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court should not "strain to find inferences favorable to the plaintiffs" nor "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). Facts that are "merely consistent with" a defendant's liability "stop[] short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 546.

## LEGAL ARGUMENT

### I.   SHINE FAILS TO PLEAD A CLAIM FOR ERISA BENEFITS

In Count I, Shine alleges that Aetna failed to pay benefits allegedly due under the terms of hundreds of distinct ERISA plans. Shine does not come close to pleading the elements of ***one*** ERISA claim, much less the thousands that it attempts to lump together.

ERISA allows one "to recover benefits due to him ***under the terms of his plan***." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). Because the "terms of the plan" are the *sine qua non* of ERISA, it follows that an ERISA plaintiff must plead sufficient information establishing the "plan terms allegedly conferring the benefits in question." *See, e.g.*, *UnitedHealthcare Servs., Inc. v. Next Health, LLC*, No. 17-0243, 2019 WL 1426256, at *2 (N.D. Tex. Mar. 29, 2019) (requiring a plaintiff to "provide representative plan terms or provisions"); *see also Heimeshoff v. Hartford Life & Accis. Ins. Co.*, 571 U.S. 99, 108 (2013) ("The plan, in short, is at the center of ERISA"). That is, an ERISA plaintiff "must explain how the plans here defin[] the[] key terms (at least on a representative level)" and why the "services at issue in this litigation satisfied these definitions." *Sky Toxicology, Ltd. v. UnitedHealthcare Ins. Co.*, No. 16- 01094, 2018 WL 4211741, at *5 (W.D. Tex. Sept. 4, 2018). "[T]o the extent the claims were underpaid (as opposed to denied), the [plaintiff] must explain how payment should have occurred under the ***specific*** terms of the relevant

4

plan(s)." *Id.* (emphasis in original)

Here, Shine **_admittedly_** cannot meet this standard because it has never had "**_access to any_**

**_of the various member plans or policies that covered Aetna members_**." FAC ¶ 103 (emphasis

added). Nevertheless – despite never having seen the plans – Shine vaguely alleges that Aetna

"refus[ed] to make reimbursements or underpa[id] the plan rates billed for Covered Services" and

that "these breaches include, among other things, refusing to pay the usual, customary and/or

reasonable charges for medically necessary covered services." FAC ¶ 41; *see also id.* ¶ 44. As

numerous courts have found, conclusory allegations of a failure to pay a providers' "usual and

customary" charges are not sufficient to state a claim for ERISA benefits. *Windmill Wellness*

*Ranch, L.L.C. v. Blue Cross and Blue Shield of Texas*, No. 19-01211, 2020 WL 7017739, at *5

(W.D. Tex. Nov. 23, 2020) ("Windmill's Complaint fails to identify the terms or provisions of the

various ERISA-governed polices that BCBS allegedly breached through its failure to pay

Windmill's 'usual and customary' charges"); *Sky Toxicology*, 2018 WL 4211741, at *5 ("to the

extent the claims were underpaid . . . the [plaintiffs] must explain how payment should have

occurred under the specific terms of the relevant plan").

This precedent applies *a fortiori* where, as here, Shine's claim rests upon thousands of

plans. As courts have recognized, the definition of "usual and customary" is **_defined_** by the terms

of each plan and will often differ from plan to plan. *See, e.g.*, *Romano Woods Dialysis Center v.*

*Admiral Linen Service, Inc.*, No. 14-1125, 2015 WL 4393027, at *4 (S.D. Tex. June 30, 2015)

(finding use of Medicare rates to calculate the usual and customary amount was "supported by the

Plan"), *aff'd* 653 F. App'x 373, 374 (5th Cir. June 30, 2016); *Scott & White Memorial Hospital v.*

*Aetna Health Holdings, LLC*, No. 17-0075, 2018 WL 7377912, at *20 (W.D. Tex. Aug. 31, 2018)

("The Plan has an explicit definition of what encompasses UCR, and it does not include acquisition

costs"); *see also In re WellPoint, Inc. Out-Of-Network "UCR" Rates Litig.*, No. 09-2074, 2014 WL 6888549, at *1 (C.D. Cal. Sept. 3, 2014) ("usual and customary" amount could not be determined on a representative basis because it turned on individual plan terms). Simply put, it is entirely implausible to suggest that Shine's billed charges **_simultaneousl_**y meet the **_distinct_** definitions of "usual and customary" found in hundreds – if not thousands – of plans **_at the same time._**

Even assuming, *arguendo*, that such allegations were sufficient (they are not), Shine's allegations are not limited to the failure to pay UCR. Indeed, Shine alleges that Aetna's breaches include the failure to pay UCR, "**_among other things_**," (FAC ¶ 41), implying that there are other, non-alleged breaches that are part of this case. Shine cannot force the Court and Aetna to guess what Aetna allegedly did wrong with respect to each of the thousands of claims at-issue.[3]

## II.   ALL OF SHINE'S NON-ERISA CLAIMS FAIL BECAUSE THEY ARE PREEMPTED BY ERISA

ERISA § 514(a) expressly preempts "any and all State laws" that "relate to" an ERISA plan. 29 U.S.C. § 1144(a). The Supreme Court has described this provision as among the most "clearly expansive" and "extensive" preemption provisions in the federal code. *See, e.g.*, *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001) (ERISA preemption is "clearly expansive"); *McNeil v. Time Ins. Co.*, 205 F.3d 179, 191 (5th Cir. 200) ("ERISA's preemption of state law claims is extensive"). A state law "relates to" an ERISA plan if it expressly "refer[s]" to such a plan, or if it has an impermissible "connection with" a plan. *See FMC Corp. v. Holliday*, 498 U.S. 52, 58–59 (1990);

---

[3] There are numerous other threshold issues that may warrant dismissal depending upon the nature of the claim and plan, such as the validity and effect of any assignment under the plan and whether plan remedies were exhausted. Courts routinely address these issues at the motion to dismiss stage, but that is not possible here given the lack of any plan or claim-specific allegations. This alone is fatal to the FAC, and Aetna reserves all rights to raise these issues in the event this case proceeds.

*Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 525 (1981). Shine's claims easily meet this standard.

A.      **Count II for Breach of Implied Contract is Preempted Because it Hinges upon the Terms of ERISA Plans**

In Count II for breach of implied contract, Shine alleges that an implied contract was formed by Aetna's prior payment of claims for dental services. Even assuming Shine's allegations are true, there is ***no*** dispute that Shine will be required to show the extent of coverage under the terms of each member's plan. *See* FAC ¶ 15 (noting that payment under the implied contract hinged upon whether services "the Covered Person was seeking would meet the definition of Covered Services [] under the Aetna coverage covering the Covered Person"). Time and again, courts have found such claims to be preempted. *See, e.g.*, *Spring E.R., LLC v. Aetna Life Ins. Co.*, No. 09-2001, 2010 WL 598748, at *5 (S.D. Tex. Feb. 17, 2010) (finding ERISA preempted implied contract claim because "whether Defendant could be liable to Plaintiff for failure to pay under an implied contract theory would turn on whether Defendant had an obligation to pay Plaintiff under the ERISA plan"). If that were not enough (it is), Shine also admits that the amount of payment turns on the definition of "usual and customary rate" and the patient's financial responsibility, both of which are defined by the plans. *See, e.g.*, *Quality Infusion Care Inc. v. Humana Health Plan of Texas Inc.*, 290 Fed. Appx. 671, 680–81 (5th Cir. 2008*)* (finding preemption where, as here, "the right to payments, as well as their amounts . . . depend upon the Plan"); *In re WellPoint Out-of-Network UCR Rates Litig.*, 2014 WL 6888549, at *10 (to determine UCR, "the Court's analysis must begin with the text of the relevant ERISA plan[]").

B.      **Counts III and IV for Violations of the Texas Insurance Code are Preempted Because They Involve the Handling and Review of ERISA Claims**

In Counts III and IV, Shine alleges violations of the Texas Insurance Code arising from Aetna's handling of the claims and alleged misrepresentations during ***pre-service*** verification of

benefit calls. FAC ¶¶ 58, 62-65. It is axiomatic that claims involving the "handling, review, and disposition of a request for coverage" are preempted by ERISA. *Mayeaux v. Louisiana Health Service and Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004). For this reason, courts have repeatedly found that ERISA preempts these exact Texas Code claims. *See, e.g.*, *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 277-78 (5th Cir. 2004) (finding precursors to Sections 541.003, 542.003 and 542.051-.061 preempted by ERISA); *Houston Home Dialysis, LP v. Blue Cross and Blue Shield of Texas*, No. 17-2095, 2018 WL 2562692, at *9 (S.D. Tex. June 4, 2018) (claims under Section 542 preempted); *Ballard v. Lincoln Life Assurance Company of Boston*, No. 20-2530, 2020 WL 5539874, at *3 (S.D. Tex. Sept. 15, 2020) (collecting cases finding claims under Section 541 preempted). Because these claims target the "improper processing of a claim for benefits under an ERISA-regulated plan," they are preempted.[4] *Ballard, supra*.

### C.   Shine's Tort Claims (Counts V-VI, VIII-X) are Preempted Because They Are Dependent upon and Derived from ERISA Plans

Shine's tort claims center upon the allegation that Aetna made certain misrepresentations during pre-service verification of benefits calls or that Aetna was unjustly enriched by failing to pay as required by the plans. *See* FAC ¶¶ 71, 79, 89, 94, 100. A verification of benefits does just that: verifies the benefits available under the plan. Naturally, a determination of whether Aetna misrepresented the extent to which "benefits" were available under the plan will require the Court to evaluate the terms of the plans themselves. *See, e.g.*, *Gilmour v. Intertek USA, Inc.*, No. 13-00266, 2018 WL 3059682, at *9 (S.D. Tex. May 30, 2018) (claim based upon pre-service promise to pay "usual and customary" charges is "dependent on, and derived from the rights of [Patient] to recover benefits under the terms of the Plan"); *Houston Home Dialysis*, 2018 WL 2562692, at *8

---

[4] Count III is also preempted because it is asserting the rights of an ERISA member as an assignee. *See* FAC ¶ 57.

(claims based upon allegation that insurer "confirmed coverage and eligibility " are preempted); *Houston Metro and Spine Surgery Center, LLC v. Health Care Service Corporation,* No. 16-1402, 2017 WL 1231072, at *3 (S.D. Tex. Apr. 4, 2017) (claims based upon pre-service verifications of benefits preempted because evaluating claims would require interpreting plan terms "to learn what payment was due").

### III.  SHINE'S NON-ERISA CLAIMS ALSO FAIL AS A MATTER OF LAW

#### A.  Count II for Breach of Implied Contract Fails Because Shine Has Not Pled Any of the Required Elements

In Count II, Shine alleges that the parties entered an implied contract under which Aetna would pay Shine's unilaterally determined rate for any claims it submitted. An implied contract claim rests upon the same elements as that of an express contract, the only difference being that the terms of the contract are established through conduct or a "course of dealing" as opposed to an express written document. *Plotkin v. Joekel*, 304 S.W.3d 455, 476 (Tex. App.—Houston 2009). The elements of either claim are an offer, acceptance, meeting of the minds, clear and definite terms, and consideration. *McCoy v. Alden Industries, Inc.*, 469 S.W.3d 716, 728 (Tex. App.—Fort Worth 2015) (listing elements); *see also Owens v. Spanish Village Community Development Corp.,* No. 05-3679, 2006 WL 237030, at *2 (S.D. Tex. Jan. 31, 2006) ("The elements necessary to establish either an express or implied contract are the same: an offer, acceptance and consideration").

Shine does not, and cannot, allege an offer, acceptance, and meeting of the minds. To the contrary, all that Shine identifies to support these elements is a "course of dealing" in which Aetna paid prior claims that were submitted. As the Fifth Circuit has found, allegations that claims were previously "submitted [] for covered services" and that "[an insurer] had previously paid such claims" are insufficient to establish an implied contract. *Electrostim Medical Services,*

*Inc. v. Health Care Service Corp.*, 614 F. App'x. 731, 744 (5th Cir. 2015); *DAC Surgical Partners P.A. v. United Healthcare Services, Inc.*, No. 11-1355, 2016 WL 7177881, at *6 (S.D. Tex. Dec. 8, 2016) ("past payments alone do not show mutual intent to be bound"). To hold otherwise would upend the entire managed care framework by discouraging the use of actual network contracts or the offering of out-of-network benefits in health plans.[5]

Moreover, according to Shine, Aetna ***expressly*** told Shine it would ***not*** pay claims absent certain information (FAC ¶ 5), and Shine admits that it was aware it was placed on an alleged "pre-payment hold." *Id.* ¶¶ 5, 26. It is entirely ***implausible*** to suggest there was an implied contract that directly contradicted Aetna's express statements. *See Climb Tech, LLC v. Verble*, No. 05-864, 2008 WL 11334913, at *3 (W.D. Tex. Feb. 7, 2008) (finding no agreement where statements in e-mail "flatly contradicted" a "meeting of the minds"). Along those same lines, Shine alleges that Aetna denied or underpaid claims ***for three straight years***. FAC ¶ 41. To suggest that Aetna's consistent ***refusal*** to pay claims at the rate Shine billed establishes an agreement to do ***just the opposite*** defies both logic and the law.[6] *See Stewart Title Guar. Co. v. Mims*, 405 S.W.3d 319, 339 (Tex. App.—Dallas 2013) ("The determination of a meeting of the minds is based on the objective standard of what the parties said and did, not on their subjective states of mind.").

Finally, Shine does not plausibly allege, as it must, the existence of consideration, which is defined as a benefit or "something of value" given to an alleged promisor (*i.e.*, Aetna) to

---

[5] More specifically, providers would have little, if any, incentive to go in-network at agreed-upon rates if they could achieve the same result by duping an insurer into paying a few claims at high rates and then assert a lifetime contract has been formed to pay at those rates forever into the future.

[6] At a minimum, Shine's allegations firmly establish there was no consistent course of conduct. The central purpose of contracts is to allow parties to obtain a modicum of certainty as to their respective duties. Accepting Shine's theory completely ignores that purpose.

induce the making of a contract. *See Fort Worth Independent School Dist. v. City of Fort Worth*, 22 S.W.3d 831, 841 (Tex. 2000) ("[a] benefit to a promisor is consideration for a valid contract"). The only "benefit" discussed in the FAC is the provision of medical services to the underlying members. As numerous courts have held, this does not confer a benefit upon Aetna. *See, e.g.*, *Mission Toxicology, L.L.C. v. UnitedHealthcare Insurance Company*, No. 17-1016, 2018 WL 2222854, at *8 (W.D. Tex. Apr. 20, 2018) ("It is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services.") (citations omitted); *Windmill Wellness*, 2020 WL 7017739, at *7 (finding services rendered by healthcare provider benefit the insured as opposed to the insurer).

**B.      Shine's State Statutory Claims Fail for Numerous Reasons**

**1.      *Shine Does Not Have Standing to Bring Statutory Violations***

In Counts III and IV, Shine claims Aetna violated Sections 542 (Count III) and 541.051, 541.052, and 541.060 (Count IV) of the Texas Insurance Code. These claims fail from the outset because "[t]hird-party claimants lack standing to assert direct claims against an insurance company for violations of the unfair or deceptive acts or practices provisions of the Texas Insurance Code." *Lasewicz v. Joyce Van Lines, Inc.*, 830 F. Supp. 2d 286, 292 (S.D. Tex. 2011) (collecting cases); *Companion Prop. & Cas. Ins. Co. v. Opheim*, No. 14-0752, 2014 WL 4209586, at *2 (N.D. Tex. Aug. 26, 2014) (healthcare providers like Plaintiff do not have "standing to sue insurers for unfair claim settlement practices under the Texas Insurance Code"). Nor can Shine obtain standing through an assignment from the insured or beneficiaries. *Am. S. Ins. Co. v. Buckley*, 748 F. Supp. 2d 610, 626 (E.D. Tex. 2010) ("[S]tatutory remedies under the Texas Insurance Code are personal and punitive in nature and the Insurance Code makes no provision for assignability"); *Great Am. Ins. Co. v. Fed. Ins. Co.*, No. 04- 2267, 2006 WL 2263312, at *10 (N.D. Tex. Aug. 8, 2006) ("the Insurance Code makes no provision for assignability").

      **2.**     ***Both Claims Fail Because Shine Does Not Identify Which Healthcare Claims are At-Issue***

Even if Shine does have standing (it does not), Counts III and IV also fail because Shine does not identify the underlying healthcare claims at-issue. Shine acknowledges that these claims do not apply to self-funded plans, and thus admits that not <u>all</u> of the claims in Exhibit A will be part of this claim. Aetna therefore has no notice of the claims it must defend against.

      **3.**     ***Shine Fails to State a Claim under Section 541 (Count III)***

In Count III, Shine alleges that Aetna violated Section 542 by failing to investigate, resolve, and pay claims promptly.[7] There is no private right of action for alleged violations of Section 542's investigatory provisions. *See Terry v. Safeco Ins. Co. of Am.*, 930 F. Supp. 2d 702, 715 (S.D. Tex. 2013) (granting judgment as matter of law in favor of defendant because there is no private right of action under Section 542.003). Similarly, the prompt pay penalty provisions under Chapter 542 are punitive and are not assignable, as referenced above. *See Buckley,* 748 F. Supp. 2d at 626 (prompt pay provisions of Chapter 542 may only be brought by participants and beneficiaries and are not assignable).

Moreover, Shine fails to plead with the specificity required by the standard. Instead, Shine recites several provisions of Section 541 – ***<u>verbatim</u>*** – in kitchen-sink format. *See* FAC ¶ 58. *Twombly* and *Iqbal* made clear long ago that threadbare recitals of the elements of a statute are insufficient. *See, e.g.*, *American Surgical Assistants, Inc. v. United Healthcare of Texas, Inc.*, No. 09-0774, 2010 WL 1340557, at *3 (S.D. Tex. Mar. 30, 2010) (explaining that a plaintiff "must show in what way [defendant insurer] . . . engaged in unfair settlement practices" in violation of the Texas Insurance Code).

---

[7] Shine fails to allege the specific subsection of Section 542 under which it is suing, which itself is fatal to the FAC.

###### 4.     *Shine Fails to State a Claim Under Section 541*

Shine next claims that Aetna violated Section 541.060 by engaging in unfair settlement practices and failing to adequately investigate its claims. FAC ¶¶ 62,63. Here again, allegations that Aetna "knowingly underpaid" and "failed to settle" unidentified claims are nothing more than a formulaic recitation of the elements of the statute. *See, e.g.*, *American Surgical Assistants*, 2010 WL 1340557, at *3 (a plaintiff "must show in what way [defendant insurer] . . . engaged in unfair settlement practices"); *Moore v. Travelers Indem. Co.*, No. 10-1695, 2010 WL 5071036, at *5 (N.D. Tex. Dec. 7, 2010) (conclusory allegation that a defendant failed to investigate or settle claims did not set forth a possibility of a violation); *Bailey v. State Farm Lloyds*, No. 00-3638, 2001 WL 34106907, at *6 (S.D. Tex. Apr. 12, 2001) ("failing to state specific actionable conduct against [defendants] does not suffice to state a claim" for violations of the Texas Insurance Code); *see also Windmill Wellness*, 2020 WL 7017739, at *13 (dismissing DTPA and Insurance Code claims for failure to allege any specific misrepresentations).

In addition to Section 541.060, Shine also alleges that Aetna engaged in false advertising in violation of Sections 541, 541.052, and 541.061 by misrepresenting the terms of insurance policies. FAC ¶ 66. The heightened pleading requirements of Rule 9(b) apply where, as here, the basis of a claim is fraud.  *See Lone Star Ladies Investment Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (applying Rule 9(b) to all averments of fraud, "whether they are part of a claim for fraud or not"). As numerous courts have held, allegations that Aetna "misrepresented the insurance policy" improperly "track[s] the statutory language under which Plaintiff purports to bring its claims." *Spring Street Apts Waco, LLC v. Philadelphia Indemnity Insurance Company*, No. 16-00315, 2017 WL 1289036, at *9 (W.D. Tex. Apr. 6, 2017) (dismissing claims under the Insurance Code); *Lakewood Chiropractic Clinic v. Travelers Lloyds Ins. Co.*, No. 09-1728, 2009

WL 3602043, at *3 (S.D. Tex. Oct. 27, 2009) ("near verbatim recitation of portions of Chapters 541 and 542 of the Texas Insurance Code" were not sufficient to state a claim).

### C.   Count V for Fraud Fails Because Shine Fails to Plead With Specificity Under Rule 9(b) and Fails to Plead Reliance, Foreseeability, and Knowledge of Falsity

In Count V, Shine alleges Aetna committed fraud by making pre-service verifications of benefits and then allegedly underpaying or failing to pay when it later received a claim. FAC ¶¶ 72-74. As an example, Shine attaches its own notes from a "verification of benefits" call in which Aetna allegedly told Shine certain details concerning a member's Plan. *See id.* ¶ 75 (citing FAC, Ex. B). This claim fails for numerous reasons.

***First***, to maintain a claim for fraud, Shine must meet the heightened pleading standard of Rule 9(b), which requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they are fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Shine has wholly failed to meet that burden here. There are no details whatsoever as to the "who, what, when, where, and how."[8] *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). The general assertion that Aetna "authorized' [] treatment does not provide [the defendant] with the specificity required to investigate the truth of the allegations regarding Defendant's fraud." *Windmill Wellness*, 2020 WL 7017739, at *10.

---

[8] Shine does attach its notes from a verification of benefits call, but that call does not contain any misrepresentations or otherwise meet the Rule 9(b) standard. More importantly, Shine cannot satisfy Rule 9(b) through one document when its claim is based upon over 5,000 different representations. *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 414 (5th Cir. 2007) (finding representative evidence of 104 out of 1800 insurance claim files at issue insufficient for purposes of extrapolating fraud); *United States ex rel. Woodard v. DaVita, Inc.*, No. 05- 227, 2011 WL 13196556, at *12 (E.D. Tex. May 9, 2011) ("Rule 9(b) simply does not allow Woodard to rest his pleading of a years-long scheme to accept educational grants on two allegations").

***Second***, "to prevail on a fraud claim, a party must demonstrate that its reliance was reasonable and justified." *Freedom Equity Groutp, Inc. v. MTL Insurance Company*, No. 01-14-00210, 2015 WL 1135186, at \*3 (Tex. App.—Houston, March 12, 2015) (citations omitted). Shine does not, and cannot, allege that it reasonably relied upon the alleged statements here. To the contrary, "***courts across the country agree that an insurer's verification of coverage is not a promise to pay*** . . . ." *RMP Enters., LLC v. Conn. Gen. Life. Ins. Co.*, No. 18-80171, 2018 WL 6110998, at \*8 (S.D. Fla. Nov. 21, 2018) (emphasis added); *see also, e.g.*, *Sadeghi v. Aetna Life Insurance Company,* 564 F. Supp. 3d 429, 464–65 (M.D. La. 2021) ("Defendant's provision to Plaintiff of a medical-necessity determination and general benefits-level information" cannot "be construed as a representation that Defendant would pay a certain amount on each claim"); *DAC Surgical Partners P.A. v. United Healthcare Services, Inc.*, No. 11-1355, 2016 WL 7157522, at \*4 (S.D. Tex. Dec. 7, 2016) ("verification [i]s not the same as a promise of payment"); *Fustok v. UnitedHealth Group, Inc.*, No. 12-787, 2013 WL 12188582, at \*4 (S.D. Tex. Jan. 18, 2013) (pre-approvals "do not waive United's right to evaluate the claim when it was submitted for reimbursement" and are "not automatically promises of reimbursements"); *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189 (Tex. 1998) (holding that pre-service letters do not waive right to deny claims). As one federal court aptly explained:

> ***[I]t is clear that no reasonable health care provider would be induced to rely on [pre-service communications] as a basis to believe that the provider would be guaranteed to receive payment for the pre-approved procedure, regardless of the materials submitted as part of the claim***.

*Korman v. ILWU-PMA Claims Office*, No. 18-07516, 2019 WL 3033529, at \*4 (C.D. Cal. July 3, 2019).

This precedent applies with even stronger force here. Exhibit B to the FAC – which is the ***only*** alleged example Shine puts forward – occurred on January 23, 2022, at which time Aetna had

allegedly been verifying benefits and then denying or underpaying claims for ***three years***. Such blind reliance and ignorance of the parties' course of dealing is unreasonable as a matter of law. *See Mugg v. Hutmacher*, No. 18-732, 2019 WL 3538979, at *6 n.7 (W.D. Tex. July 10, 2019) ("Blind reliance on representations and failure to address 'red flags' can support a negation or justifiable reliance."). Moreover, according to Shine, Aetna specifically represented that claims would be denied or pended absent certain information. FAC ¶ 5. It is impossible to find reasonable reliance when the plaintiff has "actual knowledge of a[n] [alleged] misrepresentation." *Kirk v. Kemper Investors Life Ins. Co.*, 448 F. Supp. 2d 828, 832 (S.D. Tex. 2006). Shine admits that is the case at bar.

**_Third_**, Shine fails to plausibly allege that it was foreseeable to Aetna that Shine would rely upon pre-service statements. As other courts in this Circuit have explained, the mere fact that a defendant issues a prior approval does not "necessarily lead to foreseeability of reliance by the promisor." *Fustok*, 2012 WL 12937486, at *5. To the contrary, pre-approvals or verifications do **_not_** "waive [a defendant's] right to evaluate the claim when it [is] submitted for reimbursement." *Id.*; *see also Provident Am. Ins. Co.*, 988 S.W.2d at 200.

**_Fourth_**, and finally, Shine has failed to adequately plead knowledge of falsity. "While Rule 9(b) provides that intent and knowledge may be alleged generally, th[at] is not a license to base claims of fraud upon conclusory allegations." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010). Therefore, knowledge "requires more than a simple allegation that a defendant had fraudulent intent." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). At bar, Shine alleges that Aetna "already knew that it intended to divert 7 to 7's clams containing x-ray services . . . to its SIU and to deny or underpay those claims." FAC ¶ 41. Such conclusory allegations fall far short of the pleading standard under both Rule 8 and Rule 9(b). *See*

16

*Herman Holdings, Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 565-66 (5th Cir. 2002) (dismissing fraud claim because the plaintiff "failed to set forth specific facts sufficient to indicate conscious behavior").

      **D.**    **Count VI for Negligent Misrepresentation Fails for the Same Reasons as Count V and Because Such Claims Cannot be Based Upon Representations Regarding Future Conduct**

"The elements of fraudulent misrepresentation are essentially the same as the elements of negligent misrepresentation" but negligent misrepresentation does not have the "added element of intent to deceive." *Crain v. City of Selma*, No. 16-408, 2017 WL 837687, at *6 (W.D. Tex. Mar. 3, 2017). As with the fraud claim, Shine's claim for negligent misrepresentation fails because Shine does not plead with the particularity required by Rule 9(b) and fails to allege reliance or foreseeability.[9]

This claim also fails because "[u]nder Texas law, promises of future action are not actionable as a negligent misrepresentation tort." *James v. Wells Fargo Bank, N.A.*, 533 F. App'x 444, 448 (5th Cir. 2013). Shine alleges that Aetna's ***pre-service*** verification of benefits amounted to a promise to pay healthcare claims in the future. Thus, even if a verification were a promise to pay (it is not), it would not be actionable because it relates to future conduct. *See, e.g.*, *Druker v. Fortis Health*, No. 06-00052, 2007 WL 38322, at *4 n.6 (S.D. Tex. Jan. 4, 2007) ("That an insurance policy 'will be honored' is obviously a representation of future conduct. Thus, Plaintiff's Complaint at the time of removal did not state a claim of negligent misrepresentation").

Finally, Shine cannot establish pecuniary loss or independent injury. The alleged damages are identical those asserted in the implied contract claim and thus cannot support a negligence

---

[9] The Rule 9(b) standard applies where, as here, "fraud and negligent misrepresentation claims are based on the same set of alleged facts." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003).

claim. *See Garcia v. Boyar & Miller, P.C.,* No. 06-1936, 2007 WL 2428572, at \*8 (N.D. Tex. Aug. 28, 2007); *see also 290 at 71 L.L.C. v. JPMorgan Chase Bank,* No. 09-576, 2009 WL 3784347, at \*8 (W.D. Tex. Nov. 9, 2009) (finding claim cannot be plead in the alternative).

**E.** **Count VII for Breach of Contract Fails for the Same Reasons as the ERISA Claim**

Shine's breach of contract claim alleges that Aetna breached the terms of non-ERISA insurance plans by failing to pay the benefits owed under those plans. Here again, Shine fails to identify which healthcare claims are actually subject to this Count. And as with ERISA, a plaintiff asserting a breach of contract under Texas law "must identify the specific provision in the contract that was breached." *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014) (per curiam); *see also Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 971 (N.D. Tex. 2014) (granting motion to dismiss breach of contract claim due to failure to identify the plan provision that was breached.). Shine's failure to do so here is fatal to its claim.

**F.** **Count VIII for Money Had and Received Fails Because it is Barred by the Economic Loss Rule and Does Not Apply to the Relationship Between Shine and Aetna**

In Count VII, Shine brings a claim for money had and received, alleging that "[u]nder the terms of the plans and 7 to 7's assignments of Aetna member's claims," Shine "is entitled to seek, collect, and retain the payments Aetna now retains from the premium funds paid by Aetna members and the Aetna plans." FAC ¶ 90. This claim fails from the outset under the economic loss rule, which bars claims for money had and received "when a valid, express contract covers the subject matter of the parties' dispute." *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). Such is the case here because Shine's claim is expressly based upon "the terms

of the plans and 7 to 7's assignments of Aetna member's claims."[10] FAC ¶ 90.

Moreover, "a cause of action for 'money had and received' belongs within the doctrine of unjust enrichment, which gives rise to an implied or quasi-contractual obligation to ***return*** benefits when a person is unjustly enriched by ***benefits that belong to another***." *Rehabworks, LLC v. Flanagan*, No. 03-07-00552-CV, 2009 WL 483207, at *3 (Tex. App.—Austin Feb 26, 2009) (emphasis added).  Central to this claim is that the offending party (i.e. Aetna) obtained a benefit from the plaintiff. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). As a matter of law, Aetna has never obtained a benefit from Shine. *See, e.g.*, *Mission Toxicology*, 2018 WL 2222854, at *8 ("It is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services."). Nor has it ever obtained money ***from Shine*** that must be ***returned***. *See Walker v. Cotter Properties, Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006) (describing this claim as an "obligation to repay").

### G.    Count IX for Theft of Services Fails Because Aetna Did Not Obtain Any Services from Shine and for Lack of Specificity

Shine's claim for theft of services fails because Aetna did not actually obtain any services. As noted above, healthcare services are not provided to an insurer, but rather the insured patients. *Mission Toxicology*, 2018 WL 2222854, at *8. Aetna cannot be deemed to steal services that it never received. Moreover, this claim hinges on the notion that Aetna's "confirm[ation of] benefits" amounted to a representation that "Aetna would pay" for those services. As noted above, this is not true as a matter of law.  *DAC Surgical*, 2016 WL 7157522, at *4 ("verification [i]s not the same as a promise of payment"). Finally, Shine has not pled this claim with sufficient specificity because it has not actually identified the specific services Aetna was alleged to have stolen.

---

[10] Of course, a claim based upon the terms of an ERISA plan is preempted by ERISA. *Supra* § II.

**H.** **Count X for Promissory Estoppel Because Shine Cannot Plead a Promise, Foreseeability, or Reliance**

Shine brings a claim for promissory estoppel based upon Aetna's verification of benefits. The elements of promissory estoppel are: "(1) a promise, (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promise to his detriment." *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 977 (5th Cir. 2014). As noted with respect to the fraud claims, Shine cannot plead the elements of a promise, foreseeability, or reliance. *See supra* § III.C.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Shine's Complaint, ***with prejudice***.

\*       \*       \*

**THEREFORE**, Aetna respectfully requests that this Court GRANT its Rule 12(b)(6) Motion to Dismiss.  Aetna also prays for such other and further relief to which it may show itself entitled in law or in equity.

Date: August 30, 2022

**FOX ROTHSCHILD LLP**

By:     */s/* Colin Dougherty
     Colin Dougherty (S.D. Tx. No.: 3183390)
     David Grant Crooks (Counsel)
     Texas State Bar No. 24028168
     Benjamin H. McCoy (Counsel)
     (*Pro Hac Vice* motion forthcoming)
     Saint Ann Court
     2501 N Harwood Street, Suite 1800
     Dallas, TX 75201
     cdougherty@foxrothschild.com
     dcrooks@foxrothschild.com
     bmccoy@foxrothschild.com
     phone: 214-231-5728
     fax: 972.404.0516
     ***Attorneys for Defendants***

## CERTIFICATE OF CONFERENCE

The undersigned certifies that Aetna complied with the Court's Standing Order rule. After the conference required by that Order, Shine filed an Advisory of Intent to Amend and then the operative First Amended Complaint. The amended pleading is still deficient for the reasons set forth herein.

By:     */s/ Colin D. Dougherty*
        Colin D. Dougherty

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th of August, 2022, a true and correct copy of the above and foregoing document was served upon all counsel of record as required by Tex. R. Civ. P. 21 on the date of filing.

Blair G. Francis
Thomas Seidler
Francis & Totusek LLP
1830 Ross Tower
500 N. Akard Street
Dallas, TX 75201-6614
blair.francis@ftllplaw.com
thomas.seidler@ftllplaw.com

*Choose method of delivery:*
☐ hand delivery, or
☐ electronic mail (e-mail), or
☐ facsimile, or
☐ First Class U.S. Mail, or
☐ certified mail, return receipt requested, or
X electronic filing service


By:/s/ Colin D. Dougherty
Colin D. Dougherty

22