IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SC SHINE PLLC d/b/a 7 to 7 Dental, POTRANCO 7 TO 7 PLLC, | : : : : Civil Action 5:22-cv-00834-JKP |
| Plaintiffs, | : : |
| v. | : : |
| Aetna Life Insurance Co., Aetna Dental Inc., | : : : |
| Defendants. | : : |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF OPPOSED MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

FOX ROTHSCHILD LLP
Colin Dougherty
(S.D. Tx. No.: 3183390)
David Grant Crooks
(Texas State Bar No. 24028168)
Benjamin H. McCoy
(PA Bar No. 314112)
(*Pro Hac Vice* motion forthcoming)
Saint Ann Court
2501 N Harwood Street, Suite 1800
Dallas, TX 75201
cdougherty@foxrothschild.com
dcrooks@foxrothschild.com
bmccoy@foxrothschild.com
phone: 214.231.5728
fax: 972.404.0516

*Attorneys for Defendants Aetna Life Insurance Co. and Aetna Dental Inc.*

# **TABLE OF CONTENTS**

**Page No.**

INTRODUCTION ................................................................................................................. 1

LEGAL ARGUMENT........................................................................................................... 2

    I.    Shine Fails to Plead a Claim for ERISA Benefits (Count I) and Breach of Non-ERISA Health Benefit Plans (Count VII).................................................... 2

    II.    All of Shine's Non-ERISA Claims Fail Because They are Preempted by ERISA ................................................................................................................... 3

        A.    Count II for Breach of Implied Contract is Preempted Because it Hinges upon the Terms of ERISA Plans............................................. 3

        B.    Counts III and IV for Violations of the Texas Insurance Code and Shine's Tort Claims (Counts V-VI, VIII-X) are Preempted ....... 3

    III.    Shine's Non-ERISA Claims Also Fail as a Matter of Law ................................... 4

        A.    Count II for Breach of Implied Contract Fails Because Shine Has Not Pled Any of the Required Elements................................... 4

        B.    Shine's State Statutory Claims (Counts III and IV) Fail for Numerous Reasons............................................................................... 6

        C.    Count V for Fraud Fails Because Shine Fails to Plead With Specificity Under Rule 9(b) and Fails to Plead Reliance, Foreseeability, and Knowledge of Falsity.......................................... 7

        D.    Count VI for Negligent Misrepresentation Fails Because Such Claims Cannot be Based Upon Representations Regarding Future Conduct................................................................................. 9

        E.    Count VIII for Money Had and Received Fails Because it is Barred by the Economic Loss Rule and Does Not Apply to the Relationship Between Shine and Aetna ............................................ 9

        F.    Count IX for Theft of Services Fails Because Aetna Did Not Obtain Any Services from Shine and for Lack of Specificity ......... 10

        G.    Count X for Promissory Estoppel Fails Because Shine Cannot Plead a Promise, Foreseeability, or Reliance ................................. 10

CONCLUSION................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*290 at 71 L.L.C. v. JPMorgan Chase Bank*,
   No. 09-576, 2009 WL 3784347 (W.D. Tex. Nov. 9, 2009)..........................................................9

*Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*,
   662 F.3d 376 (5th Cir. 2011) .................................................................................................3, 4

*ACS Primary Care Physicians Southwest, P.A. v. United Healthcare Insurance Company*,
   479 F. Supp. 3d 366 (S.D. Tex. 2020) ........................................................................................4

*ACS Primary Care Physicians Southwest, P.A. v. UnitedHealthcare Insurance Company*,
   514 F. Supp. 3d 927 (S.D. Tex. 2021) ........................................................................................5

*Allstate Ins. Co. v. Receivable Fin. Co.*,
   501 F.3d 398 (5th Cir. 2007) ......................................................................................................7

*Climb Tech, LLC v. Verble*,
   No. 05-864, 2008 WL 11334913 (W.D. Tex. Feb. 7, 2008).......................................................5

*Electrostim Medical Services, Inc. v. Health Care Service Corp.*,
   614 F. App'x. 731 (5th Cir. 2015) ..........................................................................................4, 5

*Fustok v. UnitedHealth Group, Inc.*,
   No. 12-787, 2012 WL 12937486 (S.D. Tex. Sept. 6, 2012).......................................................8

*Gilmour v. Aetna Health, Inc.*,
   No. 17-00510, 2018 WL 1887296 (W.D. Tex. Jan. 19, 2018) ...............................................8, 9

*Gilmour v. BCBS of Ala.*,
   No. 19-160, 2021 WL 1196272 (E.D. Tex. March 30, 2021) ..............................................7, 10

*Gilmour v. BCBS of Ala.*,
   No. 19-160, 2020 WL 2813197 (E.D. Tex. May 29, 2020).......................................................6

*Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*,
   No. 16-549, 2017 WL 1231026 (S.D. Tex. Apr. 4, 2017)..........................................................3

*Hall v. Dixon*,
   No. 09-2611, 2010 WL 3909515 (S.D. Tex. Sept. 30, 2010) ....................................................5

*Innova Hosp. San Antonio, L.P. v. Blue Cross Blue Shield of Ga., Inc.*,
   892 F.3d 719 (5th Cir. 2018) .................................................................................................2, 5

*Kennedy Krieger Institute, Inc. v. Brundage Management Company, Inc.*,
   No. 15-162, 2015 WL 7301185 (W.D. Tex. Nov. 18, 2015)......................................................4

*Mortuary Fin. Servs. v. Aetna Life Ins. Co.*,
   No. 14-256, 2014 WL 12920977 (N.D. Tex. Aug. 12, 2014)....................................................4

*Mugg v. Hutmacher*,
   No. 18-732, 2019 WL 3538979 (W.D. Tex. July 10, 2019).......................................................8

*Pogo Resources, LLC v. St. Paul Fire and Marine Insurance Company*,
   No. 19-2682, 2022 WL 209276 (N.D. Tex. Jan. 24, 2022) ........................................................6

*Rapid Tox Screen LLC v. Cigna Healthcare of Tex. Inc.*,
   No. 15-3632, 2017 WL 3658841 (N.D. Tex. 2017) ............................................................5, 10

*Richards v. Allstate Indemn. Co.*,
   No. 16-0177, 2017 WL 3274470 (W.D. Tex. May 31, 2017) ....................................................6

*RMP Enters., LLC v. Conn. Gen. Life. Ins. Co.*,
   No. 18-80171, 2018 WL 6110998 (S.D. Fla. Nov. 21, 2018) ....................................................7

*Sky Toxicology, Ltd. v. UnitedHealthcare Ins. Co.*,
   No. 16-01094, 2018 WL 4211741 (W.D. Tex. Sept. 4, 2018) ....................................................2

*Spring ER LLC v. Aetna Life Ins. Co.*,
   No. 09-2001, 2010 WL 598748 (S.D. Tex. Feb. 17, 2010) .......................................................3

*TCA Bldg. Co. v. Entech, Inc.*,
   86 S.W.3d 667 (Tex. App. 2002).................................................................................................5

*Texas Med. Res., LLP v. Molina Healthcare of Tex., Inc.*,
   620 S.W.3d 458 (Tex. App.—Dallas, 2021)...............................................................................6

*Windmill Wellness Ranch, L.L.C. v. Blue Cross and Blue Shield of Texas*,
   No. 19-1211, 2020 WL 7017739 (W.D. Tex. Apr. 22, 2020) ...............................................2, 7

**Statutes**

ERISA ...................................................................................................................................1, 2, 3, 9

**Other Authorities**

Fed. R. Civ. P. 9(b) ...................................................................................................................7, 9

Fed. R. Civ. P. 8..............................................................................................................................2

# **INTRODUCTION**

As detailed in Aetna's opening papers, Shine has done little more than file 272 pages of accounting records – covering over 5,000 distinct healthcare claims and hundreds of distinct members and plans – and tasked Aetna with guessing what it allegedly did wrong for each one. Shine's Opposition confirms that even Shine does not know the basis of its claims. For example, Shine simultaneously advances the diametrically opposed positions that its claims: (i) have nothing to do with the issue of "coverage" under the plans (Op. 4-7), and (ii) are based upon "existing facts regarding coverage and payment rates." Op. 15. Shine utilizes similar tactics throughout its Opposition, continuously reframing the theory of its case in a tortured attempt to overcome the litany of hurdles in Aetna's Motion. Suffice to say, Shine cannot meet its pleading burden by hiding the basis of its claims.

As to the specific claims, Shine cannot overcome its failure to plead the terms of the health benefit plans that form the basis of Counts I and VII – which it admittedly has never seen – and Shine cannot avoid its pleading burden through a vague generalization of what it hopes those plans might say. Shine's state law claims (Counts II-VI, VII-X) are preempted by ERISA because, as Shine concedes, they are tied directly to the plan terms. Op. 15. Preemption notwithstanding, Shine's state law claims are based upon one exemplary verification of benefits call, which Shine claims is enough to establish over 5,000 distinct instances of actionable conduct. Such a strategy cannot stand under a faithful application of *Twombly and Iqbal*. Even it could, Shine does not dispute that Aetna's verification statements did **_not_** amount to promises to pay and affirmatively alleges that it was fully aware of all material facts prior to providing services. At bottom, Shine's entire cases hinges on the Court condoning its willful ignorance and complete failure to plead with the requisite specificity. This case should be dismissed, **_with prejudice_**.

**LEGAL ARGUMENT**

I. **SHINE FAILS TO PLEAD A CLAIM FOR ERISA BENEFITS (COUNT I) AND BREACH OF NON-ERISA HEALTH BENEFIT PLANS (COUNT VII)**

Counts I and VII for ERISA benefits (I) and breach of non-ERISA plans (VII) both fail because Shine does not "explain how the plans here defin[] the[] key terms (at least on a representative level)," why the "services at issue in this litigation satisfied these definitions," or "how payment should have occurred under the specific terms of the relevant plan(s)." *Sky Toxicology, Ltd. v. UnitedHealthcare Ins. Co.,* No. 16-01094, 2018 WL 4211741, at *5 (W.D. Tex. Sept. 4, 2018). In response, Shine cites *Innova Hosp. San Antonio, L.P. v. Blue Cross Blue Shield of Ga., Inc.*, 892 F.3d 719, 731-32 (5th Cir. 2018), for the notion that it "need not necessarily identify the specific language of every plan provision at issue to survive a motion to dismiss." Op. 3. But *Innova* did not categorically excuse a plaintiff from pleading the specific plan terms. *Innova* merely held that a plaintiff could utilize ***representative*** plan terms when it pleads enough other facts to show plausibility across all the plans at-issue. *Id.* at 729. Unlike the plaintiff in *Innova* – who pled the specific terms of ***numerous*** plans – Shine has not pled the terms of ***any*** plans. Shine's conclusion that its billed charges simultaneously match the distinct payment terms for hundreds of different plans is entirely implausible. As *Innova* itself reaffirmed, "Rule 8's pleading standard does not unlock the doors of discovery for a plaintiff armed with noting more then conclusions." *Id.*

Furthermore, *Innova* made clear that representative pleading will only be permitted where the plaintiff alleges detailed facts showing it "***repeatedly*** sought to obtain [] the plan documents" but "was unable to obtain plan documents even after good-faith efforts to do so." *Innova*, 892 F.3d at 729. There are no such allegations in this case so "the exception [] set forth by the Fifth Circuit in *Innova* does not presently apply." *Windmill Wellness Ranch, L.L.C. v. Blue Cross and Blue*

2

*Shield of Texas*, No. 19-1211, 2020 WL 7017739, at *6 (W.D. Tex. Apr. 22, 2020).

## II. ALL OF SHINE'S NON-ERISA CLAIMS FAIL BECAUSE THEY ARE PREEMPTED BY ERISA

### A. Count II for Breach of Implied Contract is Preempted Because it Hinges upon the Terms of ERISA Plans

Shine's confirms ERISA preempts its implied contract claim by defining the consideration for the implied contract as "the benefit of having [Aetna's] obligations to its insureds discharged." Op. 9. As the Fifth Circuit has held, preemption applies to such claims because recovery requires the ERISA plan to "confer . . . a right to coverage for the services provided." *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 386 (5th Cir. 2011).

Nevertheless, Shine argues that preemption does not apply because Aetna has never disputed coverage, and thus its implied contract claim turns on the **_rate_** of payment as opposed to the **_right_** to payment (i.e. coverage). Op. 5. This argument fails from the outset because it is based upon Shine's manufactured distinction that Aetna's alleged refusal to process claims is somehow different from a refusal to cover benefits. **_They are the same thing_**. But even if they are not, the "rate vs. right" distinction does not apply outside the context of an express "in-network contract." *See, e.g.*, *Spring ER LLC v. Aetna Life Ins. Co.*, No. 09-2001, 2010 WL 598748, at *6 (S.D. Tex. Feb. 17, 2010) (distinguishing Shine's caselaw on this basis). More importantly, the FAC defines the "rate" of payment according to the plan terms. FAC ¶ 15; *see also Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*, No. 16-549, 2017 WL 1231026, at *3-4 (S.D. Tex. Apr. 4, 2017) (preemption applies where payment requires interpretation of plan terms).

### B. Counts III and IV for Violations of the Texas Insurance Code and Shine's Tort Claims (Counts V-VI, VIII-X) are Preempted

Shine argues that its Insurance Code and tort claims are not preempted under *Access Mediquip*, 662 F.3d 376, because they "are based on alleged misrepresentations regarding the

3

extent of coverage and rate of payment." Op. 6, 7. But this is not a case where Aetna made an independent promise to cover or pay separate from plans. To the contrary, Shine's claims are expressly grounded in each plan's terms. Count III for violations of Chapter 542 bases Shine's standing on its status as an "assignee of Aetna members' **_rights under the insurance plans_**." FAC ¶ 57. Count IV ties Aetna's liability to payments "substantially below th[at] **_required by . . . the policies or plans_** Aetna issued or administered on behalf of the Patients." FAC ¶ 61. And all of Shine's tort claims are based upon Aetna's pre-service statements detailing the "**_relevant plan terms_**," which the FAC itself defines as "coverage and payment provisions." FAC ¶ 75.

Unlike in *Access Mediquip* – where the insurer made misrepresentations about the extent of coverage that did **_not_** implicate plan terms – Shine's claims here are expressly tied to the handling, processing, and alleged "fail[ure] to pay according to [] plan terms."[1] FAC ¶ 75.

### III.   SHINE'S NON-ERISA CLAIMS ALSO FAIL AS A MATTER OF LAW

#### A.   Count II for Breach of Implied Contract Fails Because Shine Has Not Pled Any of the Required Elements

Shine's implied contract claim fails because it cannot allege an offer, acceptance, and meeting of the minds. Shine argues in response that it has sufficiently alleged a "course of conduct" in which Aetna paid unidentified claims **_years_** before many of the healthcare claims in this dispute. Op. 8. The Fifth Circuit and district courts therein have made clear that a prior payment of claims is insufficient to establish an implied contract. *See Electrostim Medical*

---

[1] The district court cases Shine cites run even further afield. *Kennedy Krieger Institute, Inc. v. Brundage Management Company, Inc.*, No. 15-162, 2015 WL 7301185, at *5 (W.D. Tex. Nov. 18, 2015), distinguished *Access Mediquip* in finding preemption of a promissory estoppel claim based upon pre-service verifications. *ACS Primary Care Physicians Southwest, P.A. v. United Healthcare Insurance Company*, 479 F. Supp. 3d 366 (S.D. Tex. 2020), involved insurance code provisions specific to **_emergency_** services. *Mortuary Fin. Servs. v. Aetna Life Ins. Co.*, No. 14-256, 2014 WL 12920977, at *2 (N.D. Tex. Aug. 12, 2014), involved a "misrepresentation[] that conveyed a promise of future payment," which was not made here.

*Services, Inc. v. Health Care Service Corp.*, 614 F. App'x. 731, 744 (5th Cir. 2015). Shine attempts to distinguish *Electrostim* on the basis that there, unlike here, there were not any facts supporting that the formation of an implied contract. Op. 8. Aetna cited *Electrostim* because it establishes that the payment of prior claims is insufficient to establish an implied contract to pay future claims. Shine cannot explain why the same fact that was rejected in *Electrostim* could possibly be sufficient here.[2]

Nor can Shine establish an implied contract claim when it was aware that Aetna would **_not_** (and was not) paying claims. *Climb Tech, LLC v. Verble*, No. 05-864, 2008 WL 11334913, at *3 (W.D. Tex. Feb. 7, 2008). Shine counters by asking the Court to ignore Aetna's statements and conduct and to focus instead on Aetna's payment of claims prior to 2019. Op. 9. The determination of whether an implied contract has been formed looks at the totality of the circumstances. Shine cannot simply ignore the part of Aetna's conduct that is inconsistent with its theory. *See TCA Bldg. Co. v. Entech, Inc.*, 86 S.W.3d 667, 673 (Tex. App. 2002) (conduct inconsistent with an intent to contract will terminate any existing contract); *see also Hall v. Dixon*, No. 09-2611, 2010 WL 3909515, at *45 (S.D. Tex. Sept. 30, 2010) (A plaintiff is required to plead more than "allegations [] consistent with illegal and legal conduct.").

Finally, Shine cannot allege valid consideration because Aetna did not receive anything in return for its alleged contractual undertaking. Shine contends that Aetna received the benefit of having "its obligations to its insureds discharged." Op. 9. This only confirms this claim is preempted. In any event, Shine's caselaw dates to 2012 and has been rejected by more recent authority. *See, e.g.*, *ACS Primary Care Physicians Southwest, P.A. v. UnitedHealthcare*

---

[2] *Innova*, 892 F.3d at 732, and *Rapid Tox Screen LLC v. Cigna Healthcare of Tex. Inc.*, No. 15-3632, 2017 WL 3658841 (N.D. Tex. 2017), dealt with claims for breach of non-ERISA plans similar to Count VII. There was no discussion of an implied contract.

*Insurance Company*, 514 F. Supp. 3d 927, 935 (S.D. Tex. 2021) (rejecting Plaintiff's argument).

### B. Shine's State Statutory Claims (Counts III and IV) Fail for Numerous Reasons

Counts III and IV for violations of Sections 542 (Count III) and 541.051, 541.052, and 541.060 (Count IV) of the Insurance Code fail for numerous reasons. ***First***, Shine does not have standing to sue for violations of these sections. In response, Shine advances three cases that allegedly establish standing. None of them do. *Pogo Resources, LLC v. St. Paul Fire and Marine Insurance Company*, No. 19-2682, 2022 WL 209276, at *17 (N.D. Tex. Jan. 24, 2022), involved a claim for breach of duty of good faith and fair dealing. *Richards v. Allstate Indemn. Co.*, No. 16-0177, 2017 WL 3274470, at *6 (W.D. Tex. May 31, 2017), was brought directly by a patient – not a provider – and the court ultimately dismissed both claims. *Gilmour v. BCBS of Ala.*, No. 19-160, 2020 WL 2813197, at *8-9 (E.D. Tex. May 29, 2020), reaffirmed that Section 541 claims are not assignable. While *Gilmour* did find certain Section 541 claims could be brought directly by a provider, that holding directly conflicts with the text of Section 541 limiting standing to "insureds and beneficiaries" and has recently been rejected by a Texas appellate court for that reason. *See Texas Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 620 S.W.3d 458, 468 (Tex. App.—Dallas, 2021) (provider does not standing to sue for violations of Section 541.060).

***Second***, Shine fails to identify the actual healthcare claims subject to this Count, an argument that the Opposition conveniently ignores.

***Third***, Shine has not adequately alleged a violation of Section 542 or 541. Shine reiterates in response that Aetna conducted a "sham investigation" to require the submission of additional information. Op. 12. Aetna's Motion cited numerous cases holding that such allegations are insufficient. Shine does not address them or cite any caselaw of its own. In fact, one of the cases Shine cites on the issue of standing ultimately dismissed the Insurance Code claims based upon similar allegations. *See Gilmour v. BCBS of Ala.*, 2020 WL 2813197, at *21 (dismissing Insurance

Code claims based upon allegations of misrepresentations across hundreds of claims).

***Fourth***, and finally, there is no private right of action for violations of Section 542's investigatory provision. Shine does not address this argument.

### C. Count V for Fraud Fails Because Shine Fails to Plead With Specificity Under Rule 9(b) and Fails to Plead Reliance, Foreseeability, and Knowledge of Falsity

Count V fails for numerous reasons. ***First***, Shine fails to meet the heightened pleading standard of Rule 9(b). Shine predictably responds that it identified certain details with respect to one verification of benefits call in Exhibit B. A years-long scheme involving thousands of claims cannot rest on one example. *See Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 414 (5th Cir. 2007) (representative evidence of 104 out of 1800 insurance claims insufficient). Even assuming, *arguendo*, that this example is sufficient to plead ***one claim***, that says nothing about the over 5,000 other alleged misrepresentations that Shine bases this claim upon. Shine cannot avoid the pleading standard for each of these claims through sheer volume. *See, e.g.*, *Gilmour v. BCBS of Ala.*, No. 19-160, 2021 WL 1196272, at *8 (E.D. Tex. March 30, 2021) (rejecting assertion that Rule 9(b) is relaxed just because the case involved hundreds of healthcare claims). For the other thousands of claims, there only remains the general assertion that that Aetna "authorized' [] treatment," which "does not provide [the defendant] with the specificity required to investigate the truth of the allegations regarding Defendant's fraud." *Windmill Wellness*, 2020 WL 7017739, at *10.

***Second***, Shine cannot establish reasonable reliance. "***Courts across the country agree that an insurer's verification of coverage is not a promise to pay*** . . . ." *RMP Enters., LLC v. Conn. Gen. Life. Ins. Co.*, No. 18-80171, 2018 WL 6110998, at *8 (S.D. Fla. Nov. 21, 2018) (emphasis added). Shine does not suggest otherwise, and instead points to cases in which the insurer falsely confirmed the patient was covered by health plans. *See* Op. 14 (citing cases). But according to

Shine, this case does not concern coverage and "Aetna never contended that the services provided were not covered." Op. 5. Shine is simply not alleging that Aetna misrepresented plan terms, but rather that Aetna "***failed to pay*** according to the plan . . . ." FAC ¶ 75 (emphasis added).

More importantly, it is impossible for Shine to establish reliance given its admission that it had actual knowledge of the fraud flag and claim denials. Attempting to sidestep these facts, Shine alleges that Aetna was also paying similar claims over that same time frame. Op. 14. Even if true, that does not permit Shine to close its eyes to ***thousands*** of denials and Aetna's express statements. Texas law forbids "blind reliance on representations and failure[s] to address 'red flags.'"³ *Mugg v. Hutmacher*, No. 18-732, 2019 WL 3538979, at *6 n.7 (W.D. Tex. July 10, 2019).

***Third***, Shine fails to plausibly allege that it was foreseeable to Aetna that Shine would rely upon pre-service statements because the mere fact that a defendant issues a prior approval does not "necessarily lead to foreseeability of reliance by the promisor." *Fustok v. UnitedHealth Group, Inc.*, No. 12-787, 2012 WL 12937486, at *5 (S.D. Tex. Sept. 6, 2012). Shine does not directly respond to this argument.

***Fourth***, Shine cannot establish that Aetna acted with knowledge of falsity. Shine counters that Aetna knew it "did not intend to perform" when it made its representations regarding coverage because Aetna was aware Shine had been placed on a fraud flag. Op. 15. Of course, if the flag is sufficient to give Aetna "knowledge of falsity," then the same holds true for Shine, which was also aware of the flag. Op. 15. Regardless, Shine concedes that Aetna's statements were ***not*** promises to do anything in the future, and thus Aetna's knowledge of future payment is irrelevant. *Id.* There are no allegations – ***none*** – that Aetna was aware it was misrepresenting the terms of the plans.

---

³ Shine cites *Gilmour v. Aetna Health, Inc.*, No. 17-00510, 2018 WL 1887296, at *16 (W.D. Tex. Jan. 19, 2018), as finding reliance despite the existence of a fraud flag. Op. 14. *Gilmour* did not address the issue of reliance.

### D. Count VI for Negligent Misrepresentation Fails Because Such Claims Cannot be Based Upon Representations Regarding Future Conduct

Beyond the failure to plead reliance, foreseeability, or with the requisite specificity, *supra* ¶ III.C, Count VI also fails because statements regarding future conduct are not actionable. Shine argues that it can avoid this bar because Aetna's verifications were ***not*** promises to pay in the future but instead statements of "existing facts regarding coverage and payment rates."[4] Op. 15-16. Of course, if Shine was not relying upon these statements as a promise to pay, it follows that Shine cannot assert a claim based upon Aetna's alleged failure to do just that.

Nor can Shine establish pecuniary loss or independent injury. Contrary to Shine's assertion (Op. 15), *Gilmour v. Aetna Health*, 2018 WL 1887296, does not address – much less hold – that this claim can be pled in the alternative. Courts that have done so have held the opposite. *See 290 at 71 L.L.C. v. JPMorgan Chase Bank,* No. 09-576, 2009 WL 3784347, at *8 (W.D. Tex. Nov. 9, 2009) (finding claim cannot be plead in the alternative).

### E. Count VIII for Money Had and Received Fails Because it is Barred by the Economic Loss Rule and Does Not Apply to the Relationship Between Shine and Aetna

Count VIII fails under the economic loss rule because Shine concedes that a valid, express contract covers the subject matter of the parties' dispute. In response, Shine points to cases standing for the notion that these claims can be plead as alternatives to breach of contract claims. But unlike Shine's cases, the claim here is not brought as an alternative to a direct claim. It is brought in Shine's role as an assignee and based upon money allegedly "had and received" ***by ERISA plans***.

Nor can Shine establish that Aetna received money that it must repay Shine. Shine instead repeats that providing services to an insured benefits an insurer. Op. 15. That argument is wrong

---

[4] Elsewhere in its Opposition Shine strenuously argues that coverage is not an issue in this case. Op. 5. Shine cannot meet the Rule 9(b) standard by hiding the true nature of its claims.

9

and also misses the mark because the alleged benefit does not take the form of "money."

### F. Count IX for Theft of Services Fails Because Aetna Did Not Obtain Any Services from Shine and for Lack of Specificity

Shine's claim for theft of services fails because Aetna did not actually obtain any services and Shine fails to identify the alleged "services" Aetna allegedly stole. Shine again argues that it did "confer a benefit upon Aetna when it provided services to its insureds." Op. 18. This is wrong. *See supra*. And even if Shine did "benefit" Aetna by discharging its contractual obligations (it did not), that is not sufficient as Aetna must receive not just a benefit, but actual services.[5]

### G. Count X for Promissory Estoppel Fails Because Shine Cannot Plead a Promise, Foreseeability, or Reliance

As noted with respect to the fraud claims, Shine cannot plead the elements of a promise, foreseeability, or reliance. *See supra* § III.C. Shine counters by citing cases that purportedly relaxed the pleading standards in the context of aggregated healthcare claims. Op. 18-19. But Shine has not adequately pled one claim, much less an adequate "representative sample." And Aetna could just as easily cite more recent cases making clear that "Plaintiffs cannot attain a relaxed pleading standard merely by filing a more voluminous complaint." *Gilmour v. BCBS of Ala.*, 2021 WL 1196272, at *8. Moreover, Shine's cases generally involved promises to pay a certain amount. Here, in contrast, Shine admits that Aetna's verifications were ***not*** a promise to pay. Op. 15.

### CONCLUSION

For the foregoing reasons, and for those set forth in Aetna' opening papers, the Court should dismiss Shine's Complaint, **with prejudice**.

---

[5] Contrary to Shine's assertion, *Rapid Tox*, 2017 WL 3658841, did not reject the argument that the plaintiff did not provide any services to an insurer. Aside from briefly summarizing the defendant's argument, *Rapid Tox* did not substantively address this issue.

10

Date: September 20, 2022                                      **FOX ROTHSCHILD LLP**

                                       By:   */s/* Colin Dougherty
                                                 Colin Dougherty (S.D. Tx. No.: 3183390)
                                                 David Grant Crooks (Counsel)
                                                 Texas State Bar No. 24028168
                                                 Benjamin H. McCoy (Counsel)
                                                 (*Pro Hac Vice* motion forthcoming)
                                                 Saint Ann Court
                                                 2501 N Harwood Street, Suite 1800
                                                 Dallas, TX 75201
                                                 cdougherty@foxrothschild.com
                                                 dcrooks@foxrothschild.com
                                                 bmccoy@foxrothschild.com
                                                 phone: 214-231-5728
                                                 fax: 972.404.0516
                                                 ***Attorneys for Defendants***

11

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 20th of September, 2022, a true and correct copy of the above and foregoing document was served upon all counsel of record as required by Tex. R. Civ. P. 21 on the date of filing.

| | |
|---|---|
| Blair G. Francis | *Choose method of delivery:* |
| Thomas Seidler | ☐ hand delivery, or |
| Francis & Totusek LLP | ☐ electronic mail (e-mail), or |
| 1830 Ross Tower | ☐ facsimile, or |
| 500 N. Akard Street | ☐ First Class U.S. Mail, or |
| Dallas, TX 75201-6614 | ☐ certified mail, return receipt requested, or |
| blair.francis@ftllplaw.com | X electronic filing service |
| thomas.seidler@ftllplaw.com | |

                                                By:/s/ Colin D. Dougherty
                                                Colin D. Dougherty