UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

SC SHINE PLLC d/b/a 7 to 7 Dental,
and POTRANCO 7to7 PLLC,

    *Plaintiffs*,

v.                                                    Case No. SA-22-CV-0834-JKP

AETNA DENTAL, INC., and AETNA
LIFE INSURANCE COMPANY,

    *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is *Defendants' Motion to Dismiss* (ECF No. 9). Pursuant to Fed. R. Civ.

P. 12(b)(6), Defendants Aetna Life Insurance Company and Aetna Dental Inc. (collectively,

"Aetna" or "Defendants") seek dismissal of the First Amended Complaint ("FAC") (ECF No. 8)

filed by Plaintiffs SC Shine PLLC d/b/a 7 to 7 Dental and Potranco 7 to 7 PLLC (collectively,

"Shine" or "Plaintiffs"). With Plaintiffs' response (ECF No. 11) and Defendants' reply (ECF No.

12) the motion is ripe for ruling. After considering the motion, related briefing, and applicable law,

the Court grants the motion in part and denies it in part.

## I. BACKGROUND[1]

Plaintiffs are dental healthcare providers that allegedly treated hundreds of individuals en-

rolled in different health benefit plans administered or insured by Aetna. FAC ¶ 1. As part of their

standard business procedures, Plaintiffs require their patients to acknowledge responsibility for all

services not paid for by a dental benefit plan and Plaintiffs obtain an Assignment of Benefits that

makes Plaintiffs a beneficiary of each patient's dental insurance benefits. *Id*. ¶ 14. Over the years,

---

[1] The First Amended Complaint provides the background facts, which the Court views in the light most favorable to
Plaintiffs as required under Fed. R. Civ. P. 12(b)(6).

the parties "conducted the business affairs between them in accordance with certain habits and courses of dealing," thereby giving rise to an implied-in-fact contract. *Id*. ¶ 15. Plaintiffs allege that Aetna failed to pay, or underpaid, thousands of health claims for services they provided to their patients. *Id*. ¶¶ 6, 11. They commenced this case in state court, but Aetna Dental removed it to this Court. *Id*. ¶ 10.

Aetna Dental removed this case on grounds that the asserted "claims are completely preempted" by "the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. ('ERISA')." Notice of Removal (ECF No. 1) ¶ 6. It further stated that diversity of citizenship will apply because "Aetna Dental Inc. is not a proper party to this action and the correct party (Aetna Life Insurance Company) is diverse." *Id*. ¶ 7. It also stated that "Plaintiff is the type of party (i.e. a provider) that courts have allowed to bring ERISA claims if they obtain valid derivative standing." *Id*. ¶ 16. It recognized that diversity or supplemental jurisdiction would exist for "any claims involving non-ERISA plans." *Id*. at 5 n.3.

After removal and compliance with this Court's Standing Order (ECF No. 4) regarding motions to dismiss, Plaintiff SC Shine PLLC filed an advisory (ECF No. 7) stating its intent to amend the complaint. A week later, it filed an amended complaint to add Aetna Life Insurance Company as a defendant and Potranco 7to7 PLLC as a plaintiff. *See* FAC ¶¶ 8-9. The amended complaint also included a specific ERISA claim. *See id*. ¶¶ 39-51.

This lawsuit arises from Defendants' failure to perform statutory and contractual obligations to pay Plaintiffs for dental services from January 1, 2019, through July 31, 2022, (hereinafter referred to as the "Service Period"). *Id*. ¶ 11. This case concerns "thousands of patients having dental coverage issued and/or administered by Aetna," 5,540 patient accounts, and seven offices of Plaintiffs. *Id*. As part of their FAC, Plaintiffs attach a redacted list of the accounts (Exhibit A) and have provided an unredacted version to Defendants that "shows for every account: the patient's

name, date of service, date of birth, identifies the plan under which the patient had coverage (such as Aetna/Accenture, Aetna/Ahren Rentals, Aetna/Alliance Bernstein, Aetna/All State Insurance, and so on), and states the identification number unique to the patient in question." *Id*. ¶ 12. As an example of "the kind of benefits information Aetna would provide to [them]," Plaintiffs also attach Exhibit B. *See id*. ¶ 25. Exhibit B is a patient form completed on January 23, 2022, after staff member "KF" of Plaintiffs spoke with a representative of Defendants ("Elyse"). *See* ECF No. 8-2.

Plaintiffs set out a several-year course of dealing relationship with Defendants. *See* FAC ¶ 15. This relationship allegedly involved a multi-step process: (1) patients would make an appointment with Plaintiffs; (2) prior to the patient's arrival, Plaintiffs would contact Aetna to verify the terms and conditions of the patient; (3) Plaintiffs would record provided information on a patient form; (4) if the sought dental services were covered by Aetna, Plaintiffs would provide the services to the patient; (5) after rendering the services, Plaintiffs would send separate bills for the services to Aetna and the patient; (6) patients would remit payment only for that part of the bill for which they were responsible, i.e., deductible, co-payment, and co-insurance obligations; and (7) Defendants remitting payment equal to the allowed amount less the patient's responsibilities. *See id*.

The parties allegedly engaged in the above multi-step process until January 2019, when Defendants began to not pay some bills. *Id*. ¶ 16. Plaintiffs allege that, "[b]y failing to pay the claims for services rendered to patients covered by self-funded plans, Aetna has failed to pay benefits it is obliged to pay under the terms of the plans in question." *Id*. ¶ 17. And, as "an assignee of those benefits," they have "the right under 29 U.S.C. § 1132 (ERISA § 502) to sue to recover those benefits." *Id*. Plaintiffs further allege that, "[b]y failing to pay the claims for services rendered to patients covered by fully insured plans, Aetna breached the contracts between itself and the plan members constituted by the fully insured plans." *Id*. Because Plaintiffs are "likewise an assignee

of the benefits payable under those plans" and because "ERISA does not preempt state law reme-dies with respect to such plans," Plaintiffs assert "a breach of contract claim against Aetna as to them." *Id.* In addition, as to "claims under fully insured plans," Plaintiffs also allege that Aetna "violated the prompt-pay provisions of Chapter 542 of the Texas Insurance Code and therefore became liable for the relief granted to providers in that chapter." *Id.* Additionally, with respect to

> claims arising under fully insured plans, Aetna failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claims in issue, with re-spect to which Aetna's liability long since became reasonably clear, and therefore Aetna violated Chapter 541 of the Texas Insurance Code and therefore became li-able for the relief – including, but not limited to, up to treble damages – granted in that chapter.

*Id.* ¶ 18.

Prior to setting out their claims, Plaintiffs set out a factual background. *See id.* ¶¶ 22-38. They assert ten claims in this case: (1) breach of plan provisions for benefits in violation of 29 U.S.C. § 1132(a)(1)(B) or ERISA § 502(a)(1)(B); (2) breach of the implied contract; (3) violation of Chapter 542; (4) violation of Chapter 541; (5) common law fraud, statutory fraud, and fraudulent inducement; (6) negligent misrepresentation; (7) breach of contract; (8) money had and received; (9) theft of services; and (10) promissory estoppel. *Id.* ¶¶ 39-107. Claims 3, 4, 7, 8, 9, and 10 are limited to fully insured claims only. For all ten claims, Plaintiffs incorporate all of the factual background. *See id.* ¶ 39, 52, 56, 61, 70, 78, 80, 87, 93, and 98.

In response to the First Amended Complaint, Defendants filed the instant motion to dis-miss. They seek to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6). They contend that (1) Plaintiffs have failed to state a claim for ERISA benefits; (2) ERISA preempts all non-ERISA claims; and (3) Plaintiffs have failed to state any non-ERISA claim regardless of preemption. Plaintiffs argue otherwise. The motion is ready for ruling.

## II. APPLICABLE LEGAL STANDARDS

Under Fed. R. Civ. P. 12(b)(6), litigants may move to dismiss asserted claims for "failure

to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). The Federal Rules of Civil Procedure specifically recognize that "a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10 (c). "Documents attached to a complaint are viewed as part of the plaintiff's pleadings." *Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 398 n.8 (5th Cir. 2005). Courts have long recognized that they may read allegations in a pleading in tandem with exhibits attached to the pleading. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Caine v. Hardy*, 943 F.2d 1406, 1411 (5th Cir. 1991). Here, Plaintiffs attached two exhibits to their amended complaint. Both sides refer to the exhibits in their briefing, and there is no basis to not consider them in resolving the pending motion. Thus, the Court will consider the exhibits in resolving the pending motion.

When ruling on a motion to dismiss, courts "accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corr., LLC*, 996 F.3d 302, 306-07 (5th Cir. 2021). But courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (citations and internal quotation marks omitted). And despite the natural focus on the allegations of the operative pleading, the party moving for dismissal under Rule 12(b)(6) has the burden to show that dismissal is warranted. *Cantu v. Guerra*, No. SA-20-CV-

0746-JKP-HJB, 2021 WL 2636017, at *1 (W.D. Tex. June 25, 2021).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). Nevertheless, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Plaintiffs need not plead the legal basis for a claim, but they "must plead facts sufficient to show that [the] claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam). And they satisfy that standard when they allege "simply, concisely, and directly events" that are sufficient to inform the defendant of the "factual basis" of their claim. *Id.*

Facts alleged by the plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

> To withstand a motion to dismiss under Rule 12(b)(6), a complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail. Facts that only conceivably give rise to relief don't suffice. Thus, though [courts] generally take as true what a complaint alleges, [they] do not credit a complaint's legal conclusions or threadbare recitals of the elements of a cause of action.

*Smith v. Heap*, 31 F. 4th 905, 910 (5th Cir. 2022) (quoting *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021)). As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8.

The "heightened pleading standard" of Fed. R. Civ. P. 9(b) applies for allegations of fraud

or mistake. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). "In a pleading alleging fraud, a plaintiff must state the circumstances constituting fraud with particularity." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). "Rule 9(b) is an exception to Rule 8(a)'s simplified pleading that calls for a 'short and plain statement of the claim.'" *Kanneganti*, 565 F.3d at 185. And "[t]he particularity demanded by Rule 9(b) is supplemental to the [*Twombly* standard]." *Id.* The *Twombly* standard "raises a hurdle in front of what courts had previously seen as a plaintiff's nigh immediate access to discovery—modest in its demands but wide in its scope." *Id.* In addressing the interplay between *Twombly* and Rules 8(a) and 9(b), the Fifth Circuit noted:

> In cases of fraud, Rule 9(b) has long played that screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later. We apply Rule 9(b) to fraud complaints with "bite" and "without apology," but also aware that Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading. Rule 9(b) does not "reflect a subscription to fact pleading" and requires only "simple, concise, and direct" allegations of the "circumstances constituting fraud," which after *Twombly* must make relief plausible, not merely conceivable, when taken as true.

*Id.* at 185-86. (citations and footnotes omitted). The Court will further expound on the Rule 9(b) pleading requirements as needed for Plaintiffs' allegations of fraud.

Further, while asserted defenses may support dismissal under Rule 12(b)(6), they only do so when the operative "pleading conclusively establishes the affirmative defense." *Reagan v. U.S. Bank, Nat. Ass'n*, No. CIV.A. H-13-00043, 2013 WL 510154, at *2 (S.D. Tex. Feb. 12, 2013) (addressing res judicata defense). And, although defendants may raise defenses through a motion to dismiss under Rule 12(b)(6), the courts view them through the standards applicable to such motions.

### III. ERISA BENEFITS (CLAIM 1)

Through Claim 1, Plaintiffs allege that Defendants breached plan provisions for benefits in violation of 29 U.S.C. § 1132(a)(1)(B). That statute permits civil actions for participants or

beneficiaries "to recover benefits due to [the participant or beneficiary] under the terms of [the relevant] plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan." In addition, while "[h]ealthcare providers may not sue in their own right to collect benefits under an ERISA plan," they "may bring ERISA suits standing in the shoes of their patients." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015). "It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim." *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 333-34 (5th Cir. 2005).

Here, Plaintiffs have alleged that their patients assigned their ERISA rights. Defendants' argument as to this claim relates to Plaintiffs not identifying representative plan terms or provisions and a perceived inability of Plaintiffs to do so because they have admitted that have not seen any plan. Mot. at 4-5 (citing FAC ¶ 103). Plaintiffs, on the other hand, argue that they have pled sufficient representative plan provisions to survive a Rule 12(b)(6) motion to dismiss.

The Fifth Circuit has stated it simply – "ERISA plaintiffs should not be held to an excessively burdensome pleading standard that requires them to identify particular plan provisions in ERISA contexts when it may be extremely difficult for them to access such plan provisions." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 728 (5th Cir. 2018). A key to surviving a Rule 12(b)(6) motion to dismiss is to plead enough factual allegations in the operative pleading "to allow a court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Iqbal*, 556 U.S. at 678). In the ERISA context, allegations of "improper reimbursement based on representative plan provisions . . . may be sufficient to show plausibility under *Twombly* and *Iqbal*" when the allegations as a whole allow for such reasonable inference. *Id*. Conclusory allegations alone "do not unlock the doors of

discovery." *Id.*

In *Innova*, the Fifth Circuit strived to strike a proper balance between the realities of ERISA litigation, in which relevant information for stating a claim is within the control and possession of the defendant, and the widely recognized principle that federal discovery is not a fishing license whereby a plaintiff may simply fish for some evidence of wrongdoing. *See id.* at 729-31. Its "holding underscores the principle that when discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in her complaint." *Id.* at 730. Such holding does not dispense with a need of plaintiffs to "exercise due diligence in pleading factual information in ERISA contexts." *Id.* Nor does it mean "that a plaintiff may always plead a claim for plan benefits under 29 U.S.C. § 1132(a)(1)(B) by incorporating representative plan language into [the] complaint." *Id.*

As in *Innova*, "this is not a case in which the plaintiff has ready access to plan documents and fails to identify the specific plan language at issue." *See id.* In this case, Plaintiffs have provided more than mere conclusions. They have presented enough factual allegations to show they are not merely pursuing a fishing expedition. The Fifth Circuit has identified sufficient factual allegations that a hospital or other health care provider in similar circumstances could make "to state a claim for plan benefits under 29 U.S.C. § 1132(a)(1)(B)," against an insurer. *See id.* at 729. More specifically, the following factual allegations are sufficient:

> (1) it provided health care services to patients insured by the Insurers; (2) the Hospital is an out-of-network provider for the purposes of the claims here; (3) the Hospital verified coverage with the Insurers before providing services; (4) the Hospital received a valid assignment of benefits; (5) the Hospital timely submitted claims to the Insurers for payment; (6) the Insurers uniformly failed to pay the claims according to the terms of the employee welfare benefit plan documents or individual insurance policies; (7) many of the same coverage and payment provisions are used across different health plans; (8) the Insurers must pay out-of-network providers some version of the "reasonable and customary" amount or the "usual, customary, and reasonable" amount; (9) representative plan terms require reimbursement of out-of-network providers at 80% of "reasonable and customary" expenses after the deductible; and (10) the Insurers reimbursed the Hospital at an average rate of 11%.

*Id*. In a more general sense, item ten means that the insurer reimbursed the health care provider at a rate lower than the required rate. As set out in their response through references to their amended complaint, Plaintiffs have stated sufficient factual allegations for their ERISA claim to survive the instant motion to dismiss. *See* Resp. at 3-4 (setting out numerous paragraphs of the amended complaint that address the ten matters set out in *Innova*).

In reply, Defendants argue that *Innova* permits use of representative plan terms when the pleading includes enough other facts to show plausibility across all plans at-issue. *See* Reply at 2. Defendants argue that Plaintiffs here have not pled the terms of any plans. *See id*. But they ignore the representative plan terms set out in ¶ 75 of the amended complaint. In ¶ 75, Plaintiffs provide an example of plan terms obtained through an Aetna representative. In this example, "the patient's plan covers 100% of the cost of diagnostic and preventative care, such as x-rays, while covering only 80% of basic restoration and fillings, after the deductible has been met." FAC ¶ 75. Furthermore, for the example plan, Aetna would pay "benefits at 'UCR,' meaning at the usual and customary rate for those services." *Id*. Plaintiffs further alleged that "[m]any of the plans at issue in this case contain these same coverage and payment provisions, and Aetna failed to pay according to the plan terms it represented to [Plaintiffs] by either failing to pay anything on the claim or by underpaying the claim." *Id*. Additionally, in ¶ 76, Plaintiffs explain that given their lack of access to plan documents, they would call "Aetna prior to every member's appointment in order to obtain information about what services were covered under the patient's plan and at what rate payment would be made by Aetna."

Defendants also argue that Plaintiffs merely make conclusory allegations of a failure to pay the usual and customary charges. Mot. at 5. But this argument appears to be no more than a twist on the argument that Plaintiffs have not sufficiently alleged the terms of any plan. Defendants point to ¶ 41 and ¶ 44 of the FAC as making vague allegations concerning paying the usual and

customary charges, while again ignoring the representative example set out in ¶ 75. They contend that more allegations are warranted given the thousands of claims at issue in this case. But Plaintiffs have made enough factual allegations to plausibly state a claim of ERISA benefits.

Defendants further argue that *Innova* only permits representative pleading when "the plaintiff alleges detailed facts showing it '**repeatedly** sought to obtain [] the plan documents' but 'was unable to obtain plan documents even after good-faith efforts to do so.'" Reply at 2 (adding emphasis and quoting *Innova*, 892 F.3d at 729). To be sure, *Innova* points out that the plaintiff there chronicled "its numerous attempts to obtain plan documents" and notes that "[i]t bears emphasizing that the [plaintiff] was unable to obtain plan documents even after good-faith efforts to do so." 892 F.3d at 729. But Defendants overstate this language from *Innova*. While the Fifth Circuit requires due diligence of ERISA plaintiffs, it expressly rejects holding them to an excessively burdensome pleading standard. *See id*. at 728-30. Accepting Defendants' position would hold the Plaintiffs here to such an excessively burdensome standard.

Plaintiffs exercised due diligence in obtaining plan terms prior to providing dental services. While they may not have sought particular plans for any particular patient, they did take steps to ascertain the plan terms. They then allege an example of such plan terms while providing other factual allegations to satisfy their pleading burden. Plaintiffs have made enough factual allegations in this case to permit the Court to draw a reasonable inference that Defendants are liable to Plaintiffs. The Court thus denies the motion as it relates to Plaintiffs' ERISA claim.

## IV. ERISA PREEMPTION

Defendants argue that ERISA preempts all of Plaintiffs' non-ERISA claims. Mot. at 6-9. Through their invocation of 29 U.S.C. § 1144(a), Defendants present a matter of conflict preemption. *See Marco Z. v. UnitedHealthcare Ins. Co.*, No. SA-20-CV-00351-JKP, 2020 WL 6492921, at *2-9 (W.D. Tex. Nov. 4, 2020) (comparing complete and conflict preemption). While complete

preemption was an issue when Aetna Dental removed the state action to federal court and could have arisen "within the procedural posture of a motion to remand," *id*. at 3, the instant motion to dismiss presents a different procedural posture which does not challenge federal question jurisdiction. As this Court has noted, "complete preemption is inapplicable in a case where federal question jurisdiction is not in dispute." *Id*. at *4.

## A. Preemption Principles

Conflict preemption finds its source in ERISA Section 514, which states in part that with certain exceptions, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit." 29 U.S.C. § 1144(a). Under this provision, "ERISA preempts state-law causes of action as they relate to employee benefit plans" even when the cause of action arises under 'general' state law which in and of itself has no impact on employee benefit plans." *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1292 n.5 (5th Cir. 1989); *accord Hernandez v. Metro. Life Ins. Co.*, 5:19-CV-37-DAE, 2019 WL 2563836, at *3 (W.D. Tex. Apr. 11, 2019). Whether ERISA conflict preemption applies to a state claim turns on whether the "claims are dependent on, and derived from, the rights of the [plan beneficiaries] to recover benefits under the terms of their ERISA plans." *Access Mediquip LLC v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 383 (5th Cir. 2011), *aff'd on reh'g en banc*, 698 F.3d 299 (5th Cir. 2012) (per curiam).

With respect to § 1144(a), the Supreme Court has "observed repeatedly that this broadly worded provision is 'clearly expansive.'" *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146 (2001) (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)). Nevertheless, it has "recognized that the term 'relate to' cannot be taken 'to extend to the furthest stretch of its indeterminacy,' or else 'for all practical purposes preemption would never run its course.'" *Id*. (same). Still, the Supreme Court has "held that a state law relates to an ERISA plan 'if it has a connection with or reference to such a plan.'" *Id*. at 147

(quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)).

Despite use of broad language, ERISA preemption has limits. *See Rozzell v. Security Servs.*, 38 F.3d 819, 822 (5th Cir. 1994). Some state law claims are simply "too tenuous, remote, or peripheral . . . to warrant a finding that the [state] law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n.21; *accord Hernandez*, 2019 WL 2563836, at *3. And the Fifth Circuit has "rejected the argument that any lawsuit in which reference to a benefit plan is necessary to compute plaintiff's damages is preempted by ERISA." *Access Mediquip*, 662 F.3d at 386 (citation and internal quotation marks omitted).

Courts should exercise "caution[] against an 'uncritical literalism' that would make preemption turn on 'infinite connections.'" *Egelhoff*, 532 U.S. at 147. They instead should consider "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Id.* (citations and internal quotation marks omitted); *accord Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006).

In enacting ERISA, Congress intended, among other things, "to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). "One of the principal goals of ERISA is to enable employers 'to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.'" *Egelhoff*, 532 U.S. at 148 (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)). "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (making statement in context of complete preemption). "A uniform administrative scheme serves to

minimize administrative and financial burdens by avoiding the need to tailor plans to the peculiarities of the law of each state." *Bank of La.*, 468 F.3d at 242 (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)). "Uniformity is impossible . . . if plans are subject to different legal obligations in different States." *Egelhoff*, 532 U.S. at 148.

Given these congressional objectives, courts apply a two-part test to determine whether ERISA preempts asserted state law claims. *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 799-800 (5th Cir. 2008). First, the state claim must address "an area of exclusive federal concern, such as the right to receive benefits under the terms of [an ERISA plan]." *Id*. at 800 (quoting *Bank of La.*, 468 F.3d at 242). Further, the claim must "directly affect[] the relationship among traditional ERISA entities – the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Id*. (same).

"Federal preemption is an affirmative defense that a defendant must plead and prove." *Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 473 (5th Cir. 2013) (quoting *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012)). Accordingly, "Aetna bears the burden of proof on both elements" of the two-part test. *Bank of La.*, 468 F.3d at 242. Even though preemption is a defense, a defendant may properly make it "the subject of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss" when the operative pleading "establishes the applicability of the . . . defense." *Simmons*, 732 F.3d at 473.

Although Defendants invoke federal preemption in their motion to dismiss, they fail to make any argument regarding the applicable two-part test. *See*, *generally*, Mot. at 6-9 (discussing preemption). Plaintiffs point out this failure in their response. *See* Resp. at 4. Defendants do not remedy the omission in their reply. *See* Reply at 3-4 (discussing preemption). Defendants' general arguments about preemption are a poor substitute for specifically addressing the two-part test made applicable through binding precedent. When moving for dismissal under Fed. R. Civ. P. 12(b)(6),

Defendants have the burden to show that dismissal is warranted. That burden includes addressing the applicable two-part test and showing that the operative pleading establishes the applicability of their preemption defense. When a party fails to argue or identify the relevant legal standard, it forfeits arguments under such standard. *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 735 (5th Cir. 2018) (addressing failure related to abusing discretion in denying motion for leave to amend out of time).

Given the failure to address the applicable two-part test, the Court would be well within its discretion to not address the preemption issues raised by Defendants at this time. Nevertheless, despite that failure, both sides have briefed the preemption issues. The briefing provides enough to make rulings as to preemption that may advance this case.

**B. Breach of Implied Contract (Claim 2)**

Defendants argue that ERISA preempts Plaintiffs' implied contract claim because the claim hinges on the terms of ERISA plans. Mot. at 7; Reply at 3. They maintain that ERISA preempts claims that require a showing of extent of coverage or when "the amount of payment turns on the definition of 'usual and customary rate' and the patient's financial responsibility, both of which are defined by the plan." Mot. at 7. However, viewing the amended complaint in the light most favorable to Plaintiffs, there is no issue regarding whether Plaintiffs provided covered services. Furthermore, when an implied contract claim merely implicates the rate of payment, ERISA does not preempt such claim. *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 530 (5th Cir. 2009).

Defendants contend that "the 'rate vs. right' distinction does not apply outside the context of an express 'in-network contract.'" Reply at 3 (citing *Spring ER LLC v. Aetna Life Ins. Co.*, No. 09-2001, 2010 WL 598748, at *6 (S.D. Tex. Feb. 17, 2010)). While the Fifth Circuit indeed decided *Lone Star* in the context of an in-network contract between the insurance company and health

care provider, *see* 579 F.3d at 528 ("Lone Star is a health care provider that entered into a contract (hereinafter 'Provider Agreement') with Aetna Health, an administrator of 'employee welfare benefit plans' regulated by ERISA."), *Spring ER* distinguished it on grounds that the "obligations arising out of dispute over rate of payment" at issue in *Lone Star* "were entirely independent of the coverage determination made under the ERISA plan," *see* 2010 WL 598748, at *6. This distinction differs from one made solely on an in-network scenario.

This difference is highlighted when *Spring ER* distinguishes a Ninth Circuit case because the claims there were "based on a telephone conversation in which the defendant agreed to pay 90% of the patient's charges" and such "agreements and representations were wholly separate from, and independent of, any ERISA plan." *See id.* (distinguishing *Marin Gen. Hosp. v. Modesto & Empire Transaction Co.*, 581 F.3d 941 (9th Cir. 2009)). In this case, Plaintiffs have alleged that the implied contract arose from a course of dealing with Aetna through telephone calls for a number of years. Viewing the factual allegations in the light most favorable to Plaintiffs, the Court does not find that the operative pleading establishes conflict preemption as to the claimed breach of implied contract.

## C. Violations of Texas Insurance Code (Claims 3 and 4)

Defendants argue that ERISA preempts Claims 3 and 4 because the claims involve the handling and review of ERISA claims. Mot. at 7-8. Relying primarily on *Access Mediquip LLC v. UnitedHealthcare Ins. Co.*, 662 F.3d 376 (5th Cir. 2011), Plaintiffs disagree. *See* Resp. at 8-9. The parties disagree as to the applicability of that case to the facts of this case. *Compare id. with* Reply at 3-4. Of course, at this point in the litigation, the Court is concerned only with the alleged facts. And when viewing factual allegations at this stage, the Court views them in the light most favorable to Plaintiffs. If the Court can reasonably construe alleged facts that overcome a motion to dismiss, the claim survives. It usually does not matter that alleged facts may also support a contrary

finding. This principle is even more pronounced when the asserted basis for dismissal is an affirmative defense. When the applicability of an affirmative defense is unclear at a preliminary motion to dismiss stage, the proper course is to deny the motion to allow clarity to later emerge.

As *Access Mediquip* recognized, the crucial issue is whether asserted "state law claims are dependent on, and derived from the rights of [patients] to recover benefits under the terms of their ERISA plans." 662 F.3d at 383. This case presents claims for dental services provided to thousands of patients totaling 5,540 accounts. *See* FAC ¶ 11. The Court can reasonably construe Claims 3 and 4 as falling outside the realm of claims that ERISA preempts.

**D. Claims 5, 6, 8, 9, and 10**

Defendants argue that ERISA preempts Claims 5 (fraud-based claims), 6 (negligent misrepresentation), 8 (money had and received), 9 (theft of services), and 10 (promissory estoppel) because the claims are dependent upon and derived from ERISA plans. Mot. 8-9. Plaintiffs again rely on *Access Mediquip* to oppose preemption. *See* Resp. at 7-8.

*Access Mediquip* declined to find state misrepresentation claims preempted because the claims were not dependent on whether the provided "services were or were not fully covered under the patients' plans" and it was not necessary to consult the plans to determine whether statements were misleading. 662 F.3d at 385. "The state law underlying [Plaintiffs'] misrepresentation claims does not purport to regulate what benefits [an insurer] provides to the beneficiaries of its ERISA plans, but rather what representations it makes to third parties about the extent to which it will pay for their services." *Id*. This analysis may apply equally to a claim of promissory estoppel. *See Mid-Town Surgical Ctr., LLP v. Humana Health Plan of Tex., Inc.*, 16 F. Supp. 3d 767, 780-81 (S.D. Tex. 2014); *Gilmour ex rel. Grantor Trusts of Victory Parent Co., LLC v. Aetna Health, Inc.*, No. SA-17-CV-00510-FB, 2018 WL 1887296, at *13 (W.D. Tex. Jan. 19, 2018) (recommendation of Mag. J.), *accepted in part and rejected in part*, unpub. order (W.D. Tex. Apr. 25, 2018) (rejecting

to extent it was recommended that Claims 2, 3, and 4 be dismissed).

Although Defendants attempt to distinguish *Access Mediquip*, the Court remains unconvinced at this stage of the proceedings. Viewing Plaintiffs' claims in the light most favorable to them, the Court declines to find these claims preempted at this point.

## E. Preemption Conclusions

At this stage of the litigation, Defendants have not carried their burden to show that ERISA preempts any claim asserted by Plaintiffs. The Court thus proceeds to consider whether Plaintiffs have alleged enough facts to plausibly state a non-ERISA claim.

## V. FAILURE TO STATE A NON-ERISA CLAIM

Notwithstanding their preemption defense, Defendants present various arguments that Plaintiffs have failed to state any non-ERISA claim that entitles Plaintiffs to relief. *See* Mot. at 9-20. For the most part, the Court will consider the arguments claim by claim.

## A. Breach of Implied Contract (Claim 2)

Defendants argue that Plaintiffs have failed to plead the required elements for their implied contract claim. Mot. 9-11. Plaintiffs responds that they have alleged enough facts to state a claim for breach of implied contract. Resp. at 8-10.

"Under Texas law, '[t]he elements of a contract, express or implied, are identical.'" *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 744 (5th Cir. 2015) (per curiam) (quoting *Plotkin v. Joekel*, 304 S.W.3d 455, 476 (Tex. App. – Houston [1st Dist.] 2009, pet. denied)). They differ, however, "in the character and manner of proof required to establish them." *Id.* (quoting *Plotkin*, 304 S.W.3d at 476-77). The Texas Supreme Court has noted that

> the distinction between an express contract and one implied in fact is that the former arises when the contractual terms are stated by the parties; and that the latter arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract.

*Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex.

1972). Whether express or implied, a contract under Texas law requires "(1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Electrostim*, 614 F. App'x at 744 (quoting *Plotkin*, 304 S.W.3d at 476). For "an implied contract, a plaintiff must plead the existence of a valid implied contract, performance or tendered performance by the plaintiff, breach of the implied contract by the defendant, and damages resulting from the breach." *Id*.; *accord Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 731 (5th Cir. 2018) (setting out same elements for a breach of contract claim).

Defendants argue that this claim fails for lack of factual allegations as to the existence of a valid contract. *See* Mot. at 9. They contend that Plaintiffs merely provide a "course of dealing" in which they paid previously submitted claims and that previously paid claims are insufficient to establish an implied contract. *Id*. at 9-10 (citing *Electrostim*). However, *Electrostim* affirmed the dismissal of a claim for alleged breach of an implied contract because the plaintiff there had "provided no facts to support its vague allegation that . . . the parties entered into an implied contract." 614 F. App'x at 744. Plaintiffs here have alleged an adequate course of conduct to support finding a valid implied contract for purposes of the instant motion to dismiss.

Defendants argue that their express statements that they would not pay claims absent certain information precludes finding an implied contract. Mot. at 10. Such argument ignores Plaintiffs' allegations of a course of conduct predating the express statements and their allegations that the express statements are part of the breach of the implied contract. Defendants' argument does not change Plaintiffs' factual allegations, which at this stage of the litigation the Court views in the light most favorable to Plaintiffs.

Defendants also argue a lack of consideration for the alleged implied contract. *See* Mot. at 10. Although it is undeniable that Plaintiffs' "patients were the immediate beneficiaries of [their]

medical services," viewing the alleged facts in the light most favorable to Plaintiffs, they have pled

that they also undertook their efforts for the benefit of Defendants "by having [Defendants'] con-

tractual obligations to its insureds discharged." *See Team Healthcare/Diagnostic Corp. v. Blue

Cross & Blue Shield of Tex.*, No. 3:10-CV-1441-BH, 2012 WL 1617087, at *6 (N.D. Tex. May 7,

2012) (addressing benefit to insurance company in context of quantum meruit). For purposes of a

motion to dismiss, this Court agrees that Plaintiffs have alleged enough facts to cover the consid-

eration element for a valid implied contract.

For these reasons, Claim 2 survives dismissal at this stage of the litigation.

**B. Violations of Texas Insurance Code (Claims 3 (Ch. 542) and 4 (Ch. 541))**

Chapter 541 of the Texas Insurance Code governs "Unfair Methods of Competition and

Unfair or Deceptive Acts or Practices." This chapter replaced Article 21.21 of the Texas Insurance

Code, *see Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 280 n.2 (5th Cir. 2007), and "cases

interpreting Article 21.21 are relevant to Chapter 541 claims," *Don Strange of Tex., Inc. v. Cincin-

nati Ins. Co.*, No. SA-20-CV-00898-XR, 2020 WL 8410466, at *2 (W.D. Tex. Sept. 14, 2020).

Section 541.151(1) authorizes private actions for damages for any "person who sustains actual

damages" against a "person engaging in an act or practice . . . defined by Subchapter B to be an

unfair method of competition or an unfair or deceptive act or practice in the business of insurance."

Subchapter B includes § 541.051 through § 541.061. "Chapter 541 provides remedies that are

personal and punitive in nature." *Goin v. Crump*, No. 05-18-00307-CV, 2020 WL 90919, at *15

(Tex. App. – Dallas, Jan. 8, 2020, reh'g denied) (citing *Stewart Title Guar. Co. v. Sterling*, 822

S.W.2d 1, 9 (Tex. 1991)).

Chapter 542 governs "Processing and Settlement of Claims." Subchapter A governs "Un-

fair Claim Settlement Practices," and Subchapter B governs "Prompt Payment of Claims." Claims

under Chapter 542 are "personal to the insured." *Evanston Ins. Co. v. ATOFINA Petrochem., Inc.*,

256 S.W.3d 660, 675 (Tex. 2008) (citing *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 20 (Tex. 2007)). Chapter 542 replaced Article 21.55 of the Texas Insurance Code and cases interpreting Article 21.55 may be relevant to Chapter 542 claims. *Lamar Homes*, 242 S.W.3d at 20. "A violation of Chapter 542 is not of the same character as a violation of Chapter 541." *Goin*, 2020 WL 90919, at \*16. Not only are "damages for failure to promptly pay in violation of Chapter 542 . . . limited to the amount of the claim, plus eighteen percent interest and reasonable attorney's fees," but unlike "Chapter 541 claims, there is little concern prompt payment claims are susceptible to the sorts of gamesmanship or strategic maneuvering that might skew the adversary process." *Id.* (citing Tex. Ins. Code § 542.060(a) for first quote and attributing second quote to *Berkley Reg'l Ins. Co. v. Philadelphia Indem. Ins. Co.*, No. A-10-CA-362-SS, 2011 WL 9879170, at \*9 (W.D. Tex. Apr. 27, 2011), *rev'd on other grounds*, 690 F.3d 342 (5th Cir. 2012)).

Defendants first challenge Plaintiffs' standing to assert these statutory violations. *See* Mot. at 11. However, the Texas Supreme Court has recently reiterated its discouragement of "the use of the term *standing* to describe extra-constitutional restrictions on the right of a particular plaintiff to bring a particular lawsuit." *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424, 441 (Tex. 2023) (quoting *Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 616 S.W.3d 558, 567 (Tex. 2021)). Under Texas law, "the satisfaction of a statutory or common-law prerequisite to a plaintiff's filing suit or recovering on a claim is not an issue of standing but of merits." *Id.* This Court agrees that, in general, it is best to reserve the term, "standing," to jurisdictional standing under the Constitution. Both sides here treat the standing issue as non-jurisdictional. The Court will thus consider the arguments regarding "standing" as a merits challenge to the Chapter 541 and 542 claims.

Defendants next argue that both claims fail because Plaintiffs do not identify the healthcare claims at issue. *See* Mot. at 12. They premise this argument on a concession of Plaintiffs that the

claims do not apply to self-funded claims; thus, Defendants contend that they lack notice of what healthcare claims they must defend against. *Id*. The Court rejects this conclusory argument of Defendants. Plaintiffs attach Exhibit A to their amended complaint to list the healthcare claims that Defendants failed to pay. That some of the listed healthcare claims do not relate to Plaintiffs' insurance code claims does not of itself make the insurance code claims subject to dismissal under Fed. R. Civ. P. 12(b)(6).

After those brief forays, Defendants attack the insurance code claims individually. *See* Mot. at 12-14. And because their arguments based on standing go to the merits of the claims, the Court also addresses them here.

Defendants argue that statutory remedies are personal and punitive in nature and thus cannot be assigned. *Id*. at 11. With respect to claims under Chapter 541, the Texas Supreme Court has ended the discussion by definitively agreeing that such claims are not assignable. *See Molina*, 659 S.W.3d at 439. *Molina* also dispels the notion that a Chapter 541 claim has any merit through a direct action by a healthcare provider when the asserted claim requires "a claim by an insured or beneficiary." *Id*. at 438 (addressing claim under § 541.060(a)). Consequently, the Court grants the motion and dismisses any claim based on § 541.060(a).

Plaintiffs, however, also base their Chapter 541 claim on § 541.051 ("Misrepresentation Regarding Policy or Insurer"), § 541.052 ("False Information and Advertising"), and § 541.061 ("Misrepresentation of Insurance Policy"). The *Molina* reasoning appears equally applicable to finding these claims to be non-assignable. *See* 659 S.W.3d at 438-39. But the *Molina* reasoning as to whether a healthcare provider may have a direct action has no apparent applicability to these other provisions because nothing within the text of the provisions requires a claim by an insured or beneficiary. At this juncture, the Court will not foreclose Plaintiffs from pursuing claims under §§ 541.051, 541.02, and 541.061 on grounds that they cannot pursue them independently.

Although *Molina* did not address any claim under Chapter 542, its analysis precludes independent claims under that Chapter. *See* Tex. Ins. Code § 542.051(2) (defining claim as "a first first-party claim that: (A) is made by an insured or policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract; and (B) must be paid by the insurer directly to the insured or beneficiary"); *Companion Prop. & Cas. Ins. Co. v. Opheim*, No. 3:14-CV-0752-G, 2014 WL 4209586, at *2 (N.D. Tex. Aug. 26, 2014) (relying on § 542.051(2) to preclude a third-party judgment creditor from suing the insurance company "under any section of Chapter 542 because [the third-party] cannot bring a first party claim under the policy"); *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 962 F. Supp. 2d 887, 898 (S.D. Tex. 2013), *aff'd in part, rev'd in part on other grounds*, 614 F. App'x 731 (5th Cir. 2015).

Nevertheless, on the present briefing, the Court is hesitant to say that *Molina* also precludes the assignment of Chapter 542 claims. Courts are split on the issue. *Compare Am. S. Ins. Co. v. Buckley*, 748 F. Supp. 2d 610, 626 (E.D. Tex. 2010) (adopting recommendation of Mag. J.) (relying on *Great Am. Ins. Co. v. Fed. Ins. Co.*, No. 3:04-CV-2267-H, 2006 WL 2263312, at *10 (N.D. Tex. Aug. 8, 2006)) *with Berkley Reg'l Ins. Co. v. Philadelphia Indem. Ins. Co.*, No. A-10-CA-362-SS, 2011 WL 9879170, at *8-9 (W.D. Tex. Apr. 27, 2011) (declining to extend principle to Chapter 542 claims and distinguishing *Great Am.* because it addressed only Chapter 541 claims), *rev'd on other grounds*, 690 F.3d 342 (5th Cir. 2012). Relying on *Berkley*, a Dallas appellate court agreed that Chapter 542 claims are assignable. *See* Goin v. Crump, No. 05-18-00307-CV, 2020 WL 90919, at *16 (Tex. App. – Dallas, Jan. 8, 2020, reh'g denied). Given the split and the recency of *Molina*, the Court finds that "the interests of judicial economy and efficient resolution are best served by deferring" a definitive determination as to the assignability of Chapter 542 claims. *Cf. Gilmour v. Blue Cross & Blue Shield of Ala.*, No. 4:19-CV-160, 2020 WL 2813197, at *8 (E.D. Tex. May 29, 2020) (deferring a challenge to assignment provisions until summary judgment),

*vacated in part on reconsideration on other grounds*, 2021 WL 1196272 (E.D. Tex. Mar. 30, 2021).

At this juncture and from the above analysis, Plaintiffs may continue to pursue claims under §§ 541.051, 541.052, and 541.061 of Chapter 541 independent of any assignment. Further, while such independent claims under Chapter 542 are foreclosed, Plaintiffs may at this time continue to pursue their Chapter 542 claims through the alleged assignments from their patients. With that said, to the extent Plaintiffs pursue a claimed violation of § 542.003(b), "known as the Texas Unfair Settlement Practices Act," of Chapter 542, , such a claim "fail[s] because there is no private cause of action under [that section]." *See Terry v. Safeco Ins. Co. of Am.*, 930 F. Supp. 2d 702, 715 (S.D. Tex. 2013).

Defendants also argue that Plaintiffs fail to allege enough facts to state a claim under the remaining provisions of Chapters 541 and 542. Mot. at 12-14. As to Chapter 542, the Court disagrees that the failure of Plaintiffs to specify a subsection is fatal to their Chapter 542 claim. *See id*. at 12 n.7. And while Defendants argue that FAC ¶ 58 does no more than state "threadbare recitals of the elements" of a Chapter 542 claim, *see id*. at 12, that paragraph in addition to prior factual allegations, *see* FAC ¶¶ 2-5, 15-16, 26-29, 31-36, and 53, provide enough factual allegations to plausibly state a violation of Chapter 542.[2]

---

[2] Plaintiffs point out that they specifically "incorporated by reference" such earlier paragraphs of their FAC into their Chapter 542 claim. *See* Resp. at 12, FAC ¶ 56. This Court has previously recognized that such incorporation by reference may be a type of abusive shotgun pleading, but in doing so, it also recognized that such abuse does not necessarily require disregarding the prior allegations or subjecting the claim to dismissal. *See Valadez v. City of San Antonio*, No. SA-21-CV-0002-JKP-RBF, 2022 WL 1608016, at *5-7 (W.D. Tex. May 20, 2022). Certainly, "the Federal Rules of Civil Procedure do not require [plaintiffs] to continually restate each of the factual allegations under each claim." *River N. Furr's, LLC v. FMP SA Mgmt. Grp., LLC*, No. 5:19-CV-00757-OLG, 2020 WL 13228368, at *3 (W.D. Tex. Jan. 13, 2020). But, while Fed. R. Civ. P. 10(c) permits statements to "be adopted by reference," abuse emerges in "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *See Valadez*, 2022 WL 1608016, at *5 (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015)). Even though the circumstances here do not ultimately warrant such disregard of prior allegations, or the dismissal of a claim based on an abusive shotgun pleading, the Court points out the abusive nature of the pleading to continue to provide notice that abusive practices may have undesirable effects.

As to the remaining Chapter 541 claims, Defendants argue that they fail to comply with the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See* Mot. at 13. The Court will consider this argument in the next section.

**C. Fraud and Fraud-Related Claims**

Plaintiffs assert multiple claims that touch upon fraud: (a) the aforementioned remaining Chapter 541 claims of Claim 4; (b) the fraud and fraud-related claims of Claim 5; and (c) the negligent misrepresentation of Claim 6. *See* FAC ¶¶ 65-66, 70-79. Defendants contend that each of these claims fail to satisfy the particularity requirements of Fed. R. Civ. P. 9(b). Before addressing that contention, however, it is prudent to further review the amended complaint and the applicable legal principles surrounding Rule 9(b).

**1. <u>Asserted Claims and Pertinent Allegations</u>**

With respect to the remaining Chapter 541 claims of Claim 4, Plaintiffs assert that "Aetna engaged in false advertising and misrepresentation in violation of Sections 541.051 and 541.052" and "engaged in misrepresentations in violation of 541.061." *Id.* ¶¶ 65-66. Through Claim 5, they assert that Defendants have engaged in common law fraud, statutory fraud, and fraudulent inducement. *See id.* ¶¶ 70-77. Although Plaintiffs identify no statute that forms the basis for their statutory fraud claim, *see id.*, it is apparent that they base the statutory fraud claim upon the identified provisions of the Texas Insurance Code. Claim 6 asserts an alternative claim based upon allegations that Defendants have engaged in negligent misrepresentation. *Id.* ¶¶ 78-79.

Prior to asserting their specific claims, Plaintiffs summarize the claims. *See id.* ¶¶ 11-21. With respect to their claims of fraud and fraudulent inducement, they contend that Defendants are liable because Aetna, through telephone answers to inquiries or through information on their website, made material misrepresentations in connection with the nonpayment of claims at issue in this case, and to which Plaintiffs relied to their detriment. *Id.* ¶ 19. That summary also states:

> Because Aetna, in connection with the claims here in issue, also made representations in the course of its business to [Plaintiffs] and in those representations supplied information that by failure to use reasonable care in gathering or communicating the information was false, and because [Plaintiffs] justifiably relied on the false information, suffering injury as a proximate result, Aetna is also liable for negligent misrepresentation.

*Id.*

Following the summary of claims, Plaintiffs set out a factual background relevant to all their claims. *See id.* ¶¶ 22-38. For each of the alleged fraud or fraud-related claims, Plaintiffs incorporate these allegations. *See id.* ¶¶ 61, 70, 78. Thus, to this extent, Plaintiffs' claims are based on the same set of operative facts.

Within early paragraphs of the operative pleading, Plaintiffs make numerous allegations related to their fraud and fraud-like claims. They allege that Defendants – through their website or through telephone calls with their agents – have provided false information about patient coverage and payment for services. *See id.* ¶ 15. And viewing their allegations in the light most favorable to Plaintiffs, they allege that they obtained the false information at their seven offices during the Service Period, January 1, 2019, through July 31, 2022. *See id.* ¶ 11.

In addition, Plaintiffs include allegations within their asserted claims. For example, Claim 5 includes seven additional paragraphs after its incorporation paragraph. *See id.* at ¶¶ 71-77. Plaintiffs allege that Defendants made material omissions, assurances, and representations concerning authorized care, network status, and payment status for patients. *Id.* ¶ 71. They allege that Defendants breached a duty to investigate the existence of coverage and benefits reasonably and adequately, and to submit accurate information to dental providers such as Plaintiffs. *Id.* ¶ 72. They allege that they relied on the representations of coverage and reimbursements for services provided to patients. *Id.* ¶ 73. They allege that their reliance was foreseeable to Defendants and that they had a reasonable expectation that Defendants would pay for the valuable services extended to the patients insured by Defendants. *Id.* ¶ 74.

Plaintiffs highlight the representative example of Exhibit B and further allege that "[m]any of the plans at issue in this case contain the[] same coverage and payment provisions" but Defendants have failed to pay in accordance to the representations made to Plaintiffs. *Id.* ¶ 75. Plaintiffs further allege:

> When Aetna told 7 to 7 in response to these and other inquiries that it would pay at the usual and customary rate and cover 100% of diagnostic and preventative services, Aetna made material misrepresentations because Aetna did not intend to perform in accordance with its representations when it made them. Aetna knew at the time of making these material misrepresentations that they were false because Aetna already knew that it intended to divert 7 to 7's claims containing x-ray services (which are considered diagnostic or preventative services) to its SIU and to deny or underpay those claims. Aetna nevertheless intended that 7 to 7 should act on its material misrepresentations by performing the dental services for its members, and it was reasonably foreseeable that 7 to 7 would do so. 7 to 7 did, in fact, act on them and performed dental services for Aetna members in reasonable reliance on Aetna's misrepresentations. When Aetna subsequently failed to pay or underpaid claims for those services, 7 to 7 suffered injury.

*Id.* ¶ 76. Finally, Plaintiffs allege that the omissions, assurances, and representations of Defendants were misleading and false and that Defendants either knew that or acted recklessly in making the representations. *Id.* ¶ 77.

Claim 6 includes ¶ 79, which is not part of Claims 4 or 5. That paragraph indicates that Plaintiffs assert negligent misrepresentation as "an alternative" claim. *See id.* ¶ 79. They rely on Exhibit B to the FAC to show the types of representations made in the course of the business relationship between the parties. *Id.* They contend that Defendants "supplied false information" in guiding them as to covered services and rates to be paid. *Id.* Additionally, Plaintiffs allege that "Aetna failed to exercise reasonable care and competence in communicating coverage and benefit information in response to [their] inquiries." *Id.* They further allege that they have "suffered pecuniary loss as a result of Aetna's negligence and negligent misrepresentations" and that they have been injured as "a proximate cause of said misrepresentations." *Id.*

## 2. **Pleading Principles under Rule 9(b)**

As made clear by Rule 9(b): "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). And while Rule 9(b) underwent stylistic amendments in 2007, that observation in *Lone Star Ladies* remains relevant to the scope of the rule. *See Hayes v. United States*, No. CV 17-3841, 2018 WL 705876, at *4 n.28 (E.D. La. Feb. 5, 2018).

"Courts have attempted to clarify Rule 9(b) by articulating workable constructions." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009). In general, "[t]he frequently stated, judicially-created standard for a sufficient fraud complaint . . . instructs a plaintiff to plead the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Id.* (omitting citation and internal quotation marks and brackets). Courts often state that these are the "minimum" requirements when Rule 9(b) applies. *See Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003). Stated succinctly, "Rule 9(b) requires pleading 'the who, what, when, where, and how.'" *Id.* (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)). But the facts of the particular case dictate what constitutes sufficient particularity. *See id.*

Indeed, the Fifth Circuit has "acknowledged that 'Rule 9(b)'s ultimate meaning is context-specific,' and thus there is no single construction of Rule 9(b) that applies in all contexts." *Kanneganti*, 565 F.3d at 188 (quoting *Williams*, 112 F.3d at 178). Consequently, "[d]epending on the

28

claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard—it depends on the elements of the claim at hand." *Id*. And courts should certainly not read a procedural rule such as Rule 9(b) as "to insist that a plaintiff plead the level of detail required to prevail at trial." *Id*. at 189.

For instance, fraudulent billing claims do not "necessarily need the exact dollar amounts, billing numbers, or dates to prove to a preponderance that fraudulent bills were actually submitted." *Id*. at 190. And, requiring "these details at pleading is one small step shy of requiring production of actual documentation with the complaint, a level of proof not demanded to win at trial and significantly more than any federal pleading rule contemplates." *Id*. In the fraudulent billing context, the Fifth Circuit disagrees that "Rule 9(b) demands that it is the contents of the presented bill itself that must be pled with particular detail and not inferred from the circumstances." *Id*. It rejected the proposition that Rule 9(b) "necessarily and always mean[s] stating the contents of a [fraudulent] bill." *Id*. It instead accepted that "particular circumstances constituting the fraudulent presentment are often harbored in the scheme." *Id*. It thus recognized that "[i]t is the scheme in which particular circumstances constituting fraud may be found that make it highly likely the fraud was consummated through the presentment of false bills." *Id*.

In short, "the 'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)." *Id*. Courts should remain cognizant that "the rule is context specific and flexible and must remain so to achieve the remedial purpose of [applicable statutes]." *Id*. Courts should apply a standard that "comports with Rule 9(b)'s objectives of ensuring the complaint 'provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs.'" *Id*. (quoting *Melder v. Morris*, 27 F.3d 1097, 1100

(5th Cir. 1994)).[3]

Additionally, courts should remain cognizant that "[t]he price of impermissible generality is that the averments will be disregarded." *Lone Star Ladies*, 238 F.3d at 368. Thus, when "averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated." *Id*. Instead, "[t]he proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated." *Id*. But this does not mean that the courts must "rewrite such a deficient complaint"; they may "plac[e] that responsibility upon counsel" by dismissing a claim without prejudice. *Id*.

As other courts have recognized, the applicability of Rule 9(b) is uncertain in the context of extended concepts of fraud-like claims. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 800, 806 (S.D. Tex. 2007); *Am. Realty Trust, Inc. v. Travelers Cas. and Sur. Co. of Am.*, 362 F. Supp. 2d 744, 749-52 (N.D. Tex. 2005). For instance, while "Rule 9(b) by its terms does not apply to negligent misrepresentation claims, [the Fifth Circuit] has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims." *Benchmark*, 343 F.3d at 723 (citing *Williams*, 112 F.3d at 177). When plaintiffs premise their fraud and negligent misrepresentation claims "on the same set of alleged facts," courts should apply the Rule 9(b) heightened pleading requirements to claims of negligent misrepresentation. *See id*.

But the Fifth Circuit later recognized that "Rule 9(b) is an exception to the liberal federal court pleading requirements embodied in Rule 8(a)" and that the "stringent pleading requirements should not be extended to causes of actions not enumerated therein." *Am. Realty Trust, Inc., v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 668 (5th Cir. 2004). The Fifth Circuit thus found

---

[3] "Strike suits are meritless class actions that allege fraud in the purchase or sale of securities." *G.F. Thomas Invs., LP v. Cleco Corp.*, 317 F. Supp. 2d 673, 678 (W.D. La. 2004) (citing *Newby v. Enron Corp.*, 338 F.3d 467, 471 (5th Cir. 2003)), *aff'd*, 123 F. App'x 155 (5th Cir. 2005).

"plaintiffs' negligent misrepresentation claims are only subject to the liberal pleading requirements of Rule 8(a)," and reversed a dismissal of such claims. *Id.*

Properly construed, *Hamilton Lane* is consistent with *Benchmark* and *Williams*. Claims that share "some but not all elements of fraud," such as negligent misrepresentation, "do not become subject to heightened pleading simply because they are based on the same set of operative facts as corresponding fraud claims." *Am. Realty Trust, Inc.*, 362 F. Supp. 2d at 749. Rule 9(b) instead

> operates to require dismissal of a negligent misrepresentation claim only when (1) a plaintiff waives arguments to the contrary or (2) the inadequate fraud claim is so intertwined with the negligent misrepresentation claim that it is not possible to describe a simple redaction that removes the fraud claim while leaving behind a viable negligent misrepresentation claim.

*Id.*

The Fifth Circuit has "articulated the mechanism by which Rule 9(b) can operate to require dismissal of a claim for which fraud is not an element." *Id.* at 750 (citing *Lone Star Ladies*). Thus,

> *Lone Star Ladies* clarifies the mechanism by which Rule 9(b) operates. It applies not to claims per se, but to "averments" of fraud. If such an averment is inadequate, then the court disregards it when determining whether a claim is stated. In other words, the inadequate averment is "stripped from the claim." When fraud is an element of the claim, inadequate averments necessarily result in dismissal. When fraud is not an element, as in the case of negligent misrepresentation, the inquiry is more complicated. One must first disregard inadequate averments of fraud. At that point, Rule 9(b) is no longer relevant. The remaining question is whether a negligent misrepresentation claim is stated under the standard notice pleading principles applicable to such claims.

*Id.* at 751 (footnote omitted).

Regarding Rule 9(b), the ultimate question before the Court "is what is required for a ticket to the federal discovery apparatus." *Kanneganti*, 565 F.3d at 190. In the False Claims Act context, *Kanneganti* makes some notable observations:

> Confronting False Claims Act defendants with both an alleged scheme to submit false claims and details leading to a strong inference that those claims were submitted – such as dates and descriptions of recorded, but unprovided, services and a

description of the billing system that the records were likely entered into—gives defendants adequate notice of the claims. In many cases, the defendants will be in possession of the most relevant records, such as patients' charts, doctors' notes, and internal billing records, with which to defend on the grounds that alleged falsely-recorded services were not recorded, were not billed for, or were actually provided.

Rule 9(b) also prevents nuisance suits and the filing of baseless claims as a pretext to gain access to a "fishing expedition." A complaint that includes both particular details of a scheme to present fraudulent bills to the Government and allegations making it likely bills were actually submitted limits any "fishing" to a small pond that is either stocked or dead. Defendants either have or do not have evidence that the alleged phony services were actually provided; they either have or do not have evidence that recorded, but unprovided or unnecessary, services did not result in bills to the Government. Discovery can be pointed and efficient, with a summary judgment following on the heels of the complaint if billing records discredit the complaint's particularized allegations. That is the balance Rule 9(b) attempts to strike. And it works best when access to discovery does not inevitably include all discovery's powers but is tailored by the district court to the case at hand. And the detail must be sufficient to allow this tailoring. Rule 9(b) should not be made to shoulder all the burden of policing abusive discovery. Its balance draws upon the vigilant hand of the district court judge.

*Id*. at 190-91 (footnote omitted).

For claims under the False Claims Act, the Fifth Circuit "reach[ed] a workable construction of Rule 9(b) . . . that effectuates Rule 9(b) without stymieing legitimate efforts to expose fraud." *Id*. at 190. Pleading such claims with particularity as required by Rule 9(b) does not require "alleg[ing] the details of an actually submitted false claim" so long as the plaintiff alleges "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id*.

### 3. **Applicability of *Kanneganti* Principles**

Even though this case does not concern a scheme to submit false claims, many of the observations in *Kanneganti* appear pertinent to the fraud and misrepresentations alleged in this case. First, as discussed in relation to Plaintiffs' ERISA claim, Plaintiffs have presented enough factual allegations to show they are not merely pursuing a fishing expedition. Thus, there is little concern about Rule 9(b)'s purpose to prevent nuisance suits and pretextual, baseless claims to gain access

to information.

Second, Plaintiffs allege that Defendants have engaged in a scheme regarding underpayments for services rendered by Plaintiffs to Defendants' insureds. As Defendants characterize it, the scheme involves their agents or representatives making pre-service verifications of benefits and then Defendants later underpaying or failing to pay for the services when they receive a claim for the services. Mot. at 14. Based upon Plaintiffs' FAC, that characterization accurately depicts the alleged scheme. Plaintiffs allege particular details of that scheme along with facts and exhibits that lead to a strong inference that they rendered services to patients and that Defendants failed to pay or underpaid for services that they had represented as being covered by relevant insurance plans, which are within the possession of Defendants. Thus, while the alleged fraud here differs from submitting false claims, there are parallels between such claims and those asserted here.

### 4. **Commonsense Approach**

This Court reads the requirements of Rule 9(b) with a healthy dose of common sense as contemplated under *Iqbal* and *Twombly* when considering whether a party has stated a claim under Rule 12(b)(6). As the Supreme Court has expressly recognized, "determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009) (relying on *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). *Iqbal* later reiterated that commonsense approach – "whether a complaint states a plausible claim" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. This commonsense approach applies in the context of Rule 9(b). *See Canales v. Allstate Fire & Cas. Ins. Co.*, No. 5:18-CV-860-DAE, 2018 WL 9986859, at *3 (W.D. Tex. Dec. 21, 2018). Some claims simply require less factual detail to state a claim upon which the Court may grant relief. *See*, *e.g.*, *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) (addressing claims under the False Claims Act).

For instance, the context may affect whether a plaintiff must "identify the specific individuals who made the specific false statements." *River N. Furr's, LLC v. FMP SA Mgmt. Grp., LLC*, No. 5:19-CV-00757-OLG, 2020 WL 13228368, at *2 (W.D. Tex. Jan. 13, 2020). While plaintiffs may need to avoid lumping dissimilar defendants into a group of alleged wrongdoers who did everything, Rule 9(b) does not require plaintiffs to distinguish between defendants that had the exact same role in the alleged fraud. *See id*. at *2-3.

### 5. Analysis of Fraud and Fraud-like Claims

Plaintiffs specifically assert a common law fraud claim in addition to some fraud-like claims. In short, the alleged fraud and fraud-like activities in this case concern Defendants' payment practices for services Plaintiffs rendered to Defendants' insureds after Plaintiffs had obtained preservice verification of benefits – either through telephone calls to Defendants or through their website. Plaintiffs have alleged details leading to a strong inference that they provided services for which Defendants have not adequately paid despite prior representations that the patients' insurance plan would cover the provided services. The plans and their coverage terms are within Defendants' possession.

In their motion, Defendants lump all of Plaintiffs' fraud and fraud-like claims together and simply argue that Plaintiffs fail to comply with Rule 9(b). But Defendants have the burden to establish a basis for dismissal. Without distinguishing between the various claims of fraud, Defendants have failed to carry their burden. Furthermore, from the initial paragraphs of the FAC, the "who" is Defendants or their agents generically. The "what" is representing coverage and payment terms. The "how" is conveying misinformation though their public websites or in response to telephone calls. The "where" is at the seven offices of Plaintiffs where employees of Plaintiffs either made phone calls to Defendants' representatives or checked their website. The "when" is "January 1, 2019 through July 31, 2022."

In addition, Plaintiffs have provided a representative example (Exhibit B). From this exhibit, the particular staff member of Plaintiffs is "KF," the agent of Defendants is "Elyse" with a corresponding agent number, and the date is January 23, 2022. ECF No. 8-2. In conjunction with the allegations of the FAC, Exhibit B supports a reasonable inference that Elyse conveyed the information recorded on Exhibit B to KF via telephone and that Plaintiffs allege that Elyse provided false information as to coverage and payment.

Defendants proclaim that Plaintiffs "cannot satisfy Rule 9(b) through one document when [their] claim is based upon over 5,000 different representations." Mot. at 14 n.14 (citing *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 414 (5th Cir. 2007); *U.S. ex rel. Woodard v. DaVita, Inc.*, No. 05- 227, 2011 WL 13196556, at *12 (E.D. Tex. May 9, 2011)). However, the *Allstate* case proceeded to trial, the representative sample was "not intended to be representative of damages," and thus did not represent an evidentiary basis for the amount of damages. *See* 501 F.3d at 413-14. The issues with the representative sample in *Allstate* have no relevance in the current circumstances. Evidentiary concerns are relevant at summary judgment and beyond.

Similarly, the reliance on *Woodard* is misplaced. Defendants rely on a specific quotation from *Woodard*: "Rule 9(b) simply does not allow Woodard to rest his pleading of a years-long scheme to accept educational grants on two allegations." *See* Mot. at 14 n.14. But Defendants omit crucial information. *Woodard* states: "Rule 9(b) simply does not allow Woodard to rest his pleading of a years-long scheme to accept educational grants on two allegations, each of which is itself significantly lacking in supporting facts." 2011 WL 13196556, at *12. The omitted clause alters the import of the quote. Rule 9(b) does not require allegations of "specific details of *every* alleged fraudulent claim forming the basis of [the operative] complaint," but parties alleging fraud "must provide *some* representative examples of [the] alleged fraudulent conduct, specifying the time, place, and content of the acts and the identity of the actors." *U.S. ex rel. Joshi v. St. Luke's Hosp.,*

*Inc.*, 441 F.3d 552, 557 (8th Cir. 2006).

While *Joshi* speaks in terms of examples, plural, the Court sees no reason why a single example coupled with more generic allegations cannot satisfy the heightened pleading standards of Rule 9(b). To hold otherwise goes beyond the requirements of Rule 9(b). Certainly, in the context of a single instance of alleged fraud, there would be no requirement for an alleged defrauded party to provide multiple examples of the alleged fraud. Even in circumstances when the alleged defrauded parties allege numerous instances of fraud, like here, a single example may suffice to avoid dismissal under Rule 12(b)(6) through Rule 9(b).

In this case, not only do Plaintiffs provide the representative example with more generic allegations that provide notice to Defendants of the nature and extent of Plaintiffs' claims, but Plaintiffs have also provided Defendants with an unredacted version of Exhibit A to identify every account, the patient for such account, dates of service for such account, and patient's insurance plan issued by Defendants. The Court has no doubt that Plaintiffs could provide additional examples if it required more. Under the allegations of this case, the Court finds that no more specificity is necessary to provide the notice required by Rule 9(b).

While, in general, it is important to distinguish between a fraud claim that invokes the definite applicability of Rule 9(b) and extended fraud-like claims that only share some elements of a fraud claim, the distinction essentially dissolves when the pleading satisfies Rule 9(b) in any event. In this case, FAC ¶¶ 65 and 66, in conjunction with prior factual allegations, suffice to state a fraud-like claim under Chapter 541 of the Texas Insurance Code. Because Plaintiffs base their statutory fraud claim within their fifth claim on these same statutory provisions, the Court finds no need for further analysis under the guise of statutory fraud.

As for the claim of fraudulent inducement, such a claim "is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its

_

proof." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). In other words, "with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Id*. at 798-99. Under Texas law, common law fraud has six elements:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 406 (5th Cir. 2007) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 204-05 (5th Cir. 2015); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). Or, as more recently stated as four elements:

> (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result.

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 653 (Tex. 2018) (citation and internal quotation marks omitted).

"Justifiable reliance usually presents a question of fact." *Id*. at 654. But in some circumstances, "the element can be negated as a matter of law when" reliance simply "cannot be justified." *Id*. Pertinent to justifiable reliance is whether "red flags" exist that indicate reliance is unwarranted. *Id*. at 655. When "determining whether justifiable reliance is negated as a matter of law, courts must consider the nature of the parties' relationship," including any contract between them. *Id*. at 654 (citation, internal quotation marks and brackets omitted). Courts must "view the circumstances in their entirety while accounting for the parties' relative levels of sophistication." *Id*. at 656.

"The 'time, place, contents, and identity' standard originated in common law fraud and

securities fraud cases making it no surprise that the elements of those claims match the pleading standard's requirements." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009). With "elements of reliance and damages, pleading common law fraud with particularity demands the specifics of the false representation—without the precise contents of the misrepresentation the plaintiff cannot show he relied on the misrepresentation to his detriment." *Id*. at 188-89. Stated differently, "common law fraud's elements of reliance and damages are intertwined with the misrepresentation and heighten the need for attention to the misrepresentation itself." *Id*. at 189.

Plaintiffs' allegations within Claim 5, in conjunction with prior allegations, are enough to satisfy Rule 9(b) for their claims of common law fraud and fraudulent inducement. Although there may be some red flags that may detract from Plaintiffs' reliance on the preservice verifications provided by Defendants, the Court finds the circumstances as a whole, including the alleged implied contract, the nature of the relationship between Plaintiffs and Defendants, and the parties' relative levels of sophistication, caution against finding Plaintiffs' reliance unjustifiable as a matter of law at this early stage of litigation. Defendants undoubtedly are highly sophisticated when it comes to matters of insurance. And while Plaintiffs surely have an elevated level of sophistication in matters of dental care and have treated thousands of patients relevant to this civil action alone, Plaintiffs are not as sophisticated as Defendants in matters of insurance. Defendants' business is one of insurance; whereas Plaintiffs' business is one of dentistry. Given the alleged scheme, the identity of the person making alleged representations of coverage may be relaxed and for this case, it is sufficient for Plaintiffs to identify them as agents of Defendants. The alleged false representations are within the scheme to underpay or not pay for dental procedures provided to patients by Plaintiffs after Defendants had represented that coverage existed.

Defendants argue that Plaintiffs lack any reasonable reliance on alleged preservice verification of coverage because "courts across the country agree that an insurer's verification coverage

is not a promise to pay . . . ." Mot at 15 (quoting *RMP Enters., LLC v. Conn. Gen. Life. Ins. Co.*, No. 18-80171, 2018 WL 6110998, at *8 (S.D. Fla. Nov. 21, 2018)). However, the language omitted through ellipses provides critical information. In full the sentence reads: "Courts across the country agree that an insurer's verification of coverage is not a promise to pay a certain amount." 2018 WL 6110998, at *8. A verification of coverage may provide a reasonable expectation that a payment of some amount would be forthcoming after rendition of services. Plaintiffs allege both underpayments and a failure to pay entirely.

Naturally, even such a reasonable expectation may be unmet in a given circumstance for a variety of reasons. But that does not mean that the circumstances preclude forming the requisite reasonable reliance for stating a fraud claim, even accepting that a "verification [is] not the same as a promise to pay, " *see DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, No. 4:11-CV-1355, 2016 WL 7157522, at *4 (S.D. Tex. Dec. 7, 2016),[4] and that pre-service representations or authorizations do not waive an insurer's right to deny claims, *see Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 200 (Tex. 1998) (recognizing that when the insurer "authorized surgery, it had not been given material facts").

Defendants also argue that Plaintiffs' "blind reliance and ignorance of the parties' course of dealing is unreasonable as a matter of law," because Defendants had been allegedly underpaying claims for three years. Mot. At 16 (citing *Mugg v. Hutmacher*, No. 18-732, 2019 WL 3538979, at *6 n.7 (W.D. Tex. July 10, 2019)). But, while "[b]lind reliance on representations" and a party's failure to address "red flags" may support a negation of justifiable reliance, it is premature to resolve factual disputes on a motion to dismiss. *See Mugg*, 2019 WL 3538979, at *6 & n.7. Courts

---

[4] The Court notes that *DAC Surgical* concerns striking inadmissible evidence from the summary judgment record and that the case included prior testimony that "verifications of coverage are different than promises to pay." *See* 2016 WL 7157522, at *3-4. Given the different procedural postures between that case and this one, the case has less persuasiveness than Defendants contend.

need to remain mindful that, usually, whether reliance is justifiable is "a question of fact." *Id*. at *6. Unlike Defendants, the Court does not see Plaintiffs' reliance as unjustifiable as a matter of law when viewing the facts in the light most favorable to Plaintiffs.

In their sixth claim, Plaintiffs allege that Defendants have engaged in negligent misrepresentation. FAC ¶¶ 78-79. Such a claim has four elements under Texas law:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005) (citation omitted). To be actionable, the alleged misrepresentation must be one "of existing fact." *Team Healthcare/Diagnostic Corp. v. Blue Cross & Blue Shield of Tex.*, No. 3:10-CV-1441-BH, 2012 WL 1617087, at *4 (N.D. Tex. May 7, 2012).

Plaintiffs make enough factual allegations to state a plausible negligent misrepresentation claim. As they point out, they base this claim, not on future conduct, but on "facts regarding coverage and payment rates" that existed at the time Defendants verified coverage. *See* Resp. at 15 (citing FAC ¶¶ 75, 79). Under such alleged facts, a negligent misrepresentation claim survives a motion to dismiss. *See Mid-Town Surgical Ctr., LLP v. Humana Health Plan of Tex., Inc.*, 16 F. Supp. 3d 767, 782-83 (S.D. Tex. 2014); *Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Tex., Inc.*, No. CIV.A. H-11-2086, 2012 WL 1252512, at *1-2 (S.D. Tex. Apr. 11, 2012).

Defendants contend that Plaintiffs take "diametrically opposed positions" that their claims are unrelated to coverage under the plans for purposes of preemption but are based on existing facts regarding coverage for purposes of their negligent misrepresentation claim. *See* Reply at 1. However, the fact that Plaintiffs' arguments against preemption – an affirmative defense – may differ from allegations relative to a specifically asserted claim does not dictate finding insufficient

factual allegations regarding the asserted claim. When viewing the factual allegations, the Court views them in the light most favorable to Plaintiffs. And, when a party presents an affirmative defense in a motion to dismiss under Fed. R. Civ. P. 12(b)(6), that party has the burden to show that the operative pleading conclusively establishes the defense. Defendants' contention makes no difference regarding the negligent misrepresentation claim.

Although Plaintiffs' operative pleading includes aspects of criticized shotgun pleadings, the FAC as a whole provides enough factual allegations to satisfy the particularity requirements of Rule 9(b). In the context of this case, the Court finds no reason to disregard the incorporated allegations or to dismiss Plaintiffs' fraud or fraud-like claims.

### D. Breach of Contract (Non-ERISA) (Claim 7)

This claim survives Defendants' motion to dismiss for the same reasons as Plaintiffs' ERISA claim. Representative plan provisions are sufficient to state a claim under the facts here.

### E. Money Had and Received (Claim 8)

Plaintiffs argue that they appropriately assert Claim 8 as an alternative to their breach of contract claim. Resp. at 17. The Court agrees. *See Cole v. Benavides*, 481 F.2d 559, 561 (5th Cir. 1973) (recognizing that Texas law permits pleading alternative theories of recovery); *Mayers v. Addison Brown, LLC*, No. 3:19-CV-3043-S, 2020 WL 7646973, at *4 (N.D. Tex. Dec. 22, 2020) (permitting such a claim as an alternative to breach of contract); *Rapid Tox Screen LLC v. Cigna Healthcare of Tex. Inc.*, No. 3:15-CV-3632-B, 2017 WL 3658841, at *11 (N.D. Tex. Aug. 24, 2017) (recognizing such an alternative claim even when the defendant argues that the economic loss doctrine barred the claim).

"A case for money had and received looks solely to whether the defendant holds money that belongs to the plaintiff." *Mission Toxicology, LLC v. Unitedhealthcare Ins. Co.*, 499 F. Supp. 3d 350, 369 (W.D. Tex. 2020) (quoting *Aetna Life Ins. Co. v. Humble Surgical Hosp., LLC*, No. CV

H-12-1206, 2016 WL 7496743, at *2 (S.D. Tex. Dec. 31, 2016)). For such a claim, "Texas follows

the ordinary principles of common law":

> The question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong. All plaintiff need show is that defendant holds money which in equity and good conscience belongs to him. Again, it has been declared that a cause of action for money had and received is less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely at the inquiry, whether the defendant holds money, which belongs to the plaintiff.

*Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (quoting *Staats v. Miller*, 243

S.W.2d 686, 687-88 (Tex. 1951)). "Such a claim 'is equitable in nature' and 'is not premised on

wrongdoing, but looks only to the justice of the case and inquires whether the defendant has received

money which rightfully belongs to another.'" *City of San Antonio v. Time Warner Cable, Tex. LLC*,

532 F. Supp. 3d 402, 428 (W.D. Tex. 2021) (quoting *Plains Exploration & Prod. Co. v. Torch

Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015)). Notably, "Texas courts have recog-

nized money-had-and-received claims with respect to a wide range of financial disputes." *Mayers*,

2020 WL 7646973, at *5. Such a claim may survive a motion to dismiss even when the plaintiff is

"attempting to obtain payment for its services" from assets of Defendants. *See Rapid Tox*, 2017 WL

3658841, at *10-11.

At this stage of the litigation, Plaintiffs may pursue the money-had-and-received claim as

an alternative claim, and they have made sufficient factual allegations to survive the motion to dis-

miss. Defendants argue that the Court should dismiss this claim because Plaintiffs conferred no

benefits upon them. Mot. at 19. Courts, however, have rejected the argument that an insurer does

not receive a benefit when a healthcare provider provides services to its insured. *See Team

Healthcare/Diagnostic Corp. v. Blue Cross & Blue Shield of Tex.*, No. 3:10-CV-1441-BH, 2012

WL 1617087, at *6 (N.D. Tex. May 7, 2012) (collecting cases); *Encompass Off. Sols., Inc. v. Conn.

Gen. Life Ins. Co.*, No. 3:11-CV-02487-L, 2012 WL 3030376, at *9 (N.D. Tex. July 25, 2012).

**F. Theft of Services (Claim 9)**

Defendants argue that this claim fails because they did not receive any services. Mot. at 19. This argument fails for the same reasons stated above. The FAC, furthermore, states sufficient factual allegations to state a plausible claim for theft of services. *See Rapid Tox Screen LLC v. Cigna Healthcare of Tex. Inc.*, No. 3:15-CV-3632-B, 2017 WL 3658841, at *11-12 (N.D. Tex. Aug. 24, 2017).

**G. Promissory Estoppel (Claim 10)**

"Although normally a defensive theory, promissory estoppel is available as a cause of action to a promisee who has reasonably relied to his detriment on an otherwise unenforceable promise." *Team Healthcare/Diagnostic Corp. v. Blue Cross & Blue Shield of Tex.*, No. 3:10-CV-1441-BH, 2012 WL 1617087, at *5 (N.D. Tex. May 7, 2012). Texas law sets out four elements for promissory estoppel: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment . . . [and (4) ] a definite finding that injustice can be avoided only by the enforcement of the promise." *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 864 (5th Cir. 1999) (quoting *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 360 (5th Cir. 1996)).

Defendants argue that this claim fails to allege adequately the first three elements. Mot. at 20. But like other asserted claims, Plaintiffs have pled enough facts to state a promissory estoppel claim. This claim survives the motion to dismiss.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** *Defendants' Motion to Dismiss* (ECF No. 9). The Court grants the motion only to the extent of dismissing any claim based on Tex. Ins. Code § 541.060(a) or § 542.003(b) and limiting Plaintiffs' pursuit of other claims under the Texas Insurance Code as follows: (1) Plaintiffs may not pursue claims under §§

541.051, 541.052, and 541.061 of Chapter 541 to the extent such claims are based upon an assignment of rights from their patients and (2) they may not pursue independent claims under Chapter 542, even though, at this time, they may continue to pursue Chapter 542 claims through the alleged assignments from their patients. The Court otherwise denies the motion.

   **SIGNED this 26th day of June 2023.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**